1    **Fernando Oblitas-Rios v. Pfizer, Inc.**
     **U.S. District Court (Southern) Case No. 06-CV-2679 (BTM)**
2    **Exhibit Index for Notice of Lodgment of Exhibits in Support of**
     **Pfizer's Motion to Transfer Venue**
3

4

5                                   **INDEX**

6                          **EXHIBITS "3" through "4"**

7

8    Exhibit 3:    Transcript from oral argument before Judge Hellerstein in the *Coultrip* case on
9                  February 28, 2007

10   Exhibit 4:    Joint Proposed Discovery Plan and Briefing Scheduling Regarding Plaintiffs' Motion
11                 To Certify The State Law Class, approved by Judge Hellerstein in the *Coultrip* case
12                 on April 20, 2007

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101-3577
619.232.0441

CASE NO. 06-CV-2679 BTM (AJB)
LODGMENT OF EXHIBITS IN SUPPORT OF
PFIZER MOTION TO TRANSFER VENUE

# EXHIBIT 3

1

72S1COUC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   ANTHONY COULTRIP, et al.,

4                   Plaintiffs,

5            v.                           06-CV-9952 (AKH)

6   PFIZER, INC.,

7                   Defendant.

8   ------------------------------x
                                      New York, N.Y.
9                                     February 28, 2007
                                      9:57 a.m.
10
    Before:
11
                    HON. ALVIN K. HELLERSTEIN,
12
                                      District Judge
13
                          APPEARANCES
14
    SPIRO MOSS BARNESS
15       Attorneys for Plaintiffs
    BY:  IRA SPIRO, ESQ.
16
    JOSEPH & HERZFELD, LLP
17       Attorneys for Plaintiffs
    BY:  CHARLES JOSEPH, ESQ.
18       MICHAEL PALMER, ESQ.
         MAIMON KIRSCHERBAUM, ESQ.
19
    LITTLER MENDELSON
20       Attorneys for Defendant
    BY:  JAMES BOUDREAU, ESQ.
21       A. MICHAEL WEBER, ESQ.
         LEE SCHRETER, ESQ.
22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

72S1COUC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   ANTHONY COULTRIP, et al.,

4               Plaintiffs,

5           v.                        06-CV-9952 (AKH)

6   PFIZER, INC.,

7               Defendant.

8   ------------------------------x
                                    New York, N.Y.
9                                   February 28, 2007
                                    9:57 a.m.
10
    Before:
11
                HON. ALVIN K. HELLERSTEIN,
12
                                    District Judge
13
                        APPEARANCES
14
    SPIRO MOSS BARNESS
15       Attorneys for Plaintiffs
    BY:  IRA SPIRO, ESQ.
16
    JOSEPH & HERZFELD, LLP
17       Attorneys for Plaintiffs
    BY:  CHARLES JOSEPH, ESQ.
18       MICHAEL PALMER, ESQ.
         MAIMON KIRSCHERBAUM, ESQ.
19
    LITTLER MENDELSON
20       Attorneys for Defendant
    BY:  JAMES BOUDREAU, ESQ.
21       A. MICHAEL WEBER, ESQ.
         LEE SCHRETER, ESQ.
22

23

24

25

72S1COUC

```
 1              (In open court)

 2              (Case called)

 3              THE CLERK:  Would the attorneys please state your name

 4    for the record.

 5              MR. JOSEPH:  Charles Joseph, Joseph & Herzfeld, for

 6    the plaintiffs.

 7              MR. SPIRO:  Ira Spiro, S-P-I-R-O, Spiro Moss Barness,

 8    for the plaintiffs.

 9              MR. PALMER:  Michael Palmer, Joseph & Herzfeld, for

10    the plaintiffs.

11              MR. KIRSCHERBAUM:  Maimon Kirscherbaum of Joseph &

12    Herzfeld for the plaintiffs.

13              MR. BOUDREAU:  Jim Boudreau, Littler Mendelson, for

14    the defendant Pfizer, Inc.

15              THE COURT:  I didn't get your name, sir.

16              MR. BOUDREAU:  Jim Boudreau.

17              THE COURT:  Yes.

18              MR. WEBER:  Michael Weber, Littler Mendelson.

19              MS. SCHRETER:  Lee Schreter, your Honor, Littler

20    Mendelson.

21              THE COURT:  Everybody can be seated.

22              Of this large group, who's going to argue?

23              MR. SPIRO:  I am for the plaintiffs, your Honor.

24              THE COURT:  So you are Mr. Spiro?

25              MR. SPIRO:  Spiro, yes.
```

72S1COUC

1          MR. BOUDREAU:  And I, Mr. Boudreau, will be the

2     principal, your Honor.

3          THE COURT:  Mr. Boudreau.

4          MR. SPIRO:  I understand that only one of us should

5     argue.  Am I right about that?

6          THE COURT:  Yes.

7          MR. JOSEPH:  Your Honor, after the argument there are

8     some other issues I'd like to bring up, if that's okay.

9          THE COURT:  Sure.

10          This is a motion to strike the class allegations of

11     the complaint.  And the motion is brought by Mr. Boudreau.  So

12     let me look at the complaint, Mr. Boudreau, and focus me on the

13     allegations you wish me to strike.

14          MR. BOUDREAU:  Your Honor, it is essentially all of

15     the class -- the Rule 23 state law class allegations.

16          THE COURT:  What are the numbers?

17          MR. BOUDREAU:  They are contained in paragraphs 24

18     through 55, your Honor.  And then to the extent the wherefore

19     clause obviously contains prayers for classwide relief, under

20     Rule 23 for that as well, your Honor.

21          THE COURT:  On a motion to strike or motion to dismiss

22     brought under Rule 12(b), I have to accept the allegations of

23     the complaint as if proved.

24          MR. BOUDREAU:  That's 12(b), your Honor, but the

25     motion is also brought under Rule 23(d).

72S1COUC

1      THE COURT:  What in 23(d) gives me the ability to go

2   beyond the allegations?

3      MR. BOUDREAU:  Your Honor, I don't think that

4   necessarily you need to go beyond the allegations, nor am I

5   asking you to.  I think 23(d) does give you that flexibility if

6   you so choose.  23(d) literally says that the Court has

7   flexibility in the management of the action, to focus the

8   attention needed to conduct the litigation, without --

9      THE COURT:  Mr. Boudreau, if you want to read

10   something, it must be done slowly so the reporter can get it

11   and I can listen to you.

12      MR. BOUDREAU:  Rule 23(d)(4), your Honor, expressly

13   authorizes a court to order that the pleadings be amended to

14   eliminate therefrom allegations as to representation of absent

15   persons and the action proceed accordingly.

16      THE COURT:  And under this section how do I deal with

17   well-pleaded allegations that set out a proper cause of action?

18      MR. BOUDREAU:  Your Honor, it's not a motion to

19   dismiss a well-pleaded cause of action; it is a motion to

20   dismiss the Rule 23 allegations.

21      THE COURT:  Well, let's get to the specifics.  Give me

22   the first allegation you want me to strike.

23      MR. BOUDREAU:  Again, your Honor, if we go to the

24   class allegations of the complaint, which are broken out in the

25   paragraphs I cited previously --

72S1COUC

1         THE COURT:  Well, I'm starting with 24.  You tell me

2    what it is you want me to strike.  Let's go to the first clause

3    that you regard as substantive.

4         MR. BOUDREAU:  It's paragraph 24, your Honor, and

5    frankly, the whole allegation, is that plaintiff Albarran

6    brings the California claims for relief pursuant to the Federal

7    Rules of Civil Procedure Rule 23, on behalf of all persons who

8    were, are or will be employed by defendants on or after the

9    date that is four years before the filing of the complaint.

10        THE COURT:  So this is much too broad because it

11   doesn't signify the particular people in the class.

12        MR. BOUDREAU:  Your Honor, it is -- that would be one

13   aspect of it.  But that the Rule 23 allegations fail to state a

14   viable claim under Rule 23 --

15        THE COURT:  You've got two points here.  One is that

16   it is inconsistent to have a class, an opt-in class under the

17   Fair Labor Standards Act and an opt-out class under state law.

18   I held in *Ansoumana* that that wasn't so, and I have not thought

19   anything since that case that would cause me to depart from

20   that ruling as a matter of theoretical exercise.  However,

21   *Ansoumana* was based on a different set of employees in a

22   different locale from the set of employees and the several

23   locales that apply to this particular case.  So there's nothing

24   in paragraph 24 except its excessive breadth that lets me focus

25   on that distinction.  Insofar as you're making an argument that

72S1COUC

1    theoretically there cannot be a coexistence of the two kinds of

2    classes, I reject it.  And I rule as I did in *Ansoumana* that in

3    an appropriate case, you can have a coexistence.  But I stress,

4    in *Ansoumana* there was a more limited class operating in

5    particular supermarket locales in the city of New York and

6    particularly in Manhattan in the city of New York, a particular

7    type of employee, rather fungible, because all they were doing

8    was delivery services and incidental other services in the

9    supermarket or drugstore and it was a class that was easily

10   manageable and I could make sure that nothing in the opt-out

11   class under New York State law would bury the remedies or

12   detract from the remedies of the opt-in people under the Fair

13   Labor Standards Act.  All the actions under the state law did

14   in that case was somewhat enlarge the scope of action because

15   the statute of limitations in New York was a little more

16   liberal than it was under federal law.  That may not be true

17   here, but my focus is now on the pleadings and I want you to go

18   through the pleadings and focus me on specific allegations that

19   you think are not cognizable by the Court dealing with the Fair

20   Labor Standards Act case.

21          MR. BOUDREAU:  Your Honor, I mean, I could go through

22   all 40 --

23          THE COURT:  That's what I want you to do.

24          MR. BOUDREAU:  -- some odd allegations.

25          THE COURT:  That's what I want you to do.

72S1COUC

1       MR. BOUDREAU:  Well, again, your Honor, but again,

2    this ties back to the argument that you're telling me you

3    reject and --

4       THE COURT:  Well, I reject it.  So now you've lost

5    that argument.  What's your other position?

6       MR. BOUDREAU:  Well, there's two fallback arguments,

7    your Honor.  The first being that on the face of the complaint

8    they cannot satisfy the standards under Rule 23.

9       THE COURT:  Okay.  I'll hear that.  What's the other

10    point?

11       MR. BOUDREAU:  And the second point, your Honor, is,

12    irrespective of Rule 23, that the Court should exercise its

13    discretion under 1367 and refuse or deny supplemental

14    jurisdiction of the state law claims.

15       THE COURT:  That's very hard to do on a motion to

16    dismiss.

17       MR. BOUDREAU:  Your Honor, it's been done, and it's

18    been done rather frequently and more increasingly in the last

19    year.  There's a litany of cases, and I think it's particularly

20    appropriate in this case --

21       THE COURT:  The law in the Second Circuit is very

22    deferential to pleadings.  This is still a circuit where former

23    professor and dean and later judge Charles Clark developed a

24    sustainable presence with regard to the rule to plead.  Lots of

25    district judges have tried to exercise control over a case by

72S1COUC

1  creating tight standards under the pleadings and they've

2  failed.  They've failed in the trust area, they've failed in

3  the securities area, they've failed in other areas as well,

4  including some efforts of my own.  So I'm not about to do that.

5          MR. BOUDREAU:  Well, your Honor, I would say within

6  the Second Circuit that trend is changing a little bit in this

7  past year with the --

8          THE COURT:  Maybe.

9          MR. BOUDREAU:  The fact of the matter here is, your

10  Honor, that this is unlike any other case that the plaintiffs

11  cite or that, frankly, we've been able to find either in the

12  Southern District of New York or anywhere else.

13          THE COURT:  I agree with you, but I still have to deal

14  with pleadings, so I want you to take me through the pleadings

15  and point out specific allegations that, given what I've just

16  said, you think can be stricken.

17          MR. BOUDREAU:  Well, your Honor, if we start with

18  paragraph 24, we went through it.  If we go to paragraph 25,

19  your Honor, the proposed class that the California plaintiff

20  seeks to represent is defined as all persons who have been, are

21  or in the future will be employed in California by defendants

22  in any of the covered positions.

23          THE COURT:  So what are the covered positions?

24          MR. BOUDREAU:  There are seven covered positions, your

25  Honor.

72S1COUC

1          THE COURT:  Where do I find them?

2          MR. BOUDREAU:  They're delineated at paragraph 2 of

3     the complaint.

4          THE COURT:  Okay.  Now does plaintiff make allegations

5     that adequately bring these seven categories into the criteria

6     of Rule 23?

7          MR. BOUDREAU:  Well, I would say, your Honor, what

8     they say is they're all salespeople performing similar jobs.

9     But what we have now is seven different job titles in a minimum

10    of four different states.  Indeed, they've already signaled the

11    intent to amend the complaint again to add other state law

12    claims.

13         THE COURT:  Do we have any idea of how many people are

14    involved?

15         MR. BOUDREAU:  In the lawsuit?

16         THE COURT:  If nobody should opt out, how many people

17    would be involved?

18         MR. BOUDREAU:  Well over 10,000, your Honor.

19         THE COURT:  In four states.

20         MR. BOUDREAU:  Well, they've already --

21         THE COURT:  Functioning in seven different categories.

22         MR. BOUDREAU:  Seven different job categories,

23    currently four different states, and dealing with, on the face

24    of --

25         THE COURT:  I suppose that would make my findings with

72S1COUC

1    regard to state law in the four states, there would be a
2    disparity between those four states and every other state in
3    which Pfizer operates, which might not be consistent with the
4    Fair Labor Standards Act.

5         MR. BOUDREAU:  That is true, your Honor.  That is
6    certainly a possibility.  And you know, your Honor, the thing
7    about the four separate claims is, keep in mind, this is an
8    exemption case.  These are exempt employees who claim that they
9    are not properly exempt.  State law on the exemptions differs.
10   This is not a, say, an off-the-clock case, where nonexempt
11   employees are all -- they're all being paid hourly rates and
12   aren't being paid a proper overtime rate.  It is -- and the
13   test for exemptions, for example, in California are
14   dramatically different than under the Fair Labor Standards Act.
15   There are peculiar -- there's a Pennsylvania state law claim --

16        THE COURT:  You're saying it could be different among
17   the four states and they're likely to be different with the
18   federal standards.

19        MR. BOUDREAU:  That's exactly right, your Honor, you
20   know, and -- So obviously you've got the issues of statutes of
21   limitations differing, you've got the calculation of --

22        THE COURT:  Do we know that or --

23        MR. BOUDREAU:  Statute in New York is six years, for
24   example, your Honor, Wisconsin is two years, Pennsylvania is
25   three years, the federal act is two years, or three, in the

72S1COUC

1    event of willfulness.

2         In addition, your Honor, you've got different remedial

3    provisions.  That is how you calculate penalties, to the extent

4    they exist.  In New York you can't have a Rule 23 class that

5    has a penalty provision in it.  So presumably when they add the

6    New York case that they've said they're going to add, they'll

7    waive liquidated damages.  Yet there are liquidated damages

8    provisions in Pennsylvania law, in Wisconsin law, and they're

9    different than the Fair Labor Standards Act.

10        So in addition to that, you then fall back, your

11   Honor, to the ultimate issue of, take away the remedial

12   provisions and the procedural issues, statute of limitations,

13   but you have again the dramatically different exemption

14   requirements.  I mean, the test for an exempt employee in

15   California is dramatically different than the federal standard.

16        THE COURT:  You covered that already.

17        MR. BOUDREAU:  Right.  And so the other aspect, your

18   Honor, is that because it's an exemption case, you're looking

19   at the need to conduct individualized inquiries into each of

20   these seven positions because theoretically, and it's entirely

21   possible, there are going to be multiple exemptions that apply

22   to some or all of these different job categories.  There's

23   three on the face of the complaint.

24        THE COURT:  Is it alleged how these different

25   categories work, whether they're out of the home, whether

72S1COUC

1   they're in different plants of the company?

2         MR. BOUDREAU:  They work out of their home, your

3   Honor.  It is alleged that they work out of their home.

4         THE COURT:  That's the allegation in the complaint?

5         MR. BOUDREAU:  I'll leave it to the plaintiffs to

6   articulate it, but I believe that's the case, your Honor.  I'm

7   looking for it.

8         THE COURT:  It's likely that some work out of the home

9   and some work through a company office.

10        MR. BOUDREAU:  Reporting to a company office, your

11  Honor.  There's a regional office structure.  But again, the

12  job duties amongst the seven are --

13        THE COURT:  Vastly different.

14        MR. BOUDREAU:  -- are different in terms of how they

15  sell the product or particularly what type of products you

16  sell.

17        And keep in mind, your Honor, when it comes to this

18  exemption issue, many states now are increasingly regulating

19  the sale of pharmaceutical products on their own.  For example,

20  Maine has its own statute, you know, sort of a mini FDA, if you

21  will, in terms of what can or cannot be said or how drugs can

22  be sold within the state.  So a salesman in Maine is going to

23  have a very different job, frankly, than one in New York that's

24  not regulated.

25        So that's going to be the case for each and every one

72S1COUC

1   of these jobs, and it's entirely possible that one sales rep in

2   Ohio could be exempt and a sales rep in Maine could be

3   determined to be nonexempt because that issue of exemption

4   status is a highly individualized inquiry and is dependent on

5   what job responsibilities the individual performs, and that is

6   what that individual in fact performs, not what some job

7   description says or what they're supposed to do.

8        So ultimately, your Honor, in the event of a Rule 23

9   certification, you know, where you have an opt-out class that

10  the plaintiffs admit is going to dwarf the opt-in class, at

11  least they claim it's going to, I mean, you're going to be

12  embroiled in a state-by-state factual basis, one, learning

13  state law on an individualized basis, and then two, applying

14  the particular -- particulars of those state laws to each

15  individual.

16       And you know, the federal Fair Labor Standards Act has

17  a highly compensated exemption.  You know, if you're over a

18  hundred thousand dollars a year, certain -- you can meet an

19  exemption under the standards, gets a little easier, there's a

20  way around it.  That's not going to be the case in every state.

21  And ultimately what you're going to end up with, your Honor, is

22  I think what many of the cases that decline supplemental

23  jurisdiction talk about and that is the state law claims sort

24  of wagging the federal tail, if you will.

25       And it ultimately brings me back to this issue, your

72S1COUC

1    Honor, and I know you rejected this argument, but I'm concerned
2    about the inherent incompatibility --
3           THE COURT:  Well, I didn't reject inherent
4    incompatibility as applied to these particular facts.  I reject
5    the argument in theory.  I found in *Ansoumana* that I needn't
6    reject the theory there because there was essential harmony.
7    That may not be the case here for all the reasons that you set
8    out.
9           MR. BOUDREAU:  And your Honor, if I could explain,
10   because I think your *Ansoumana* decision actually supports the
11   argument that we're making.  And it's the federal Fair Labor
12   Standards Act 216(b) specifically says that no individual's
13   FLSA's rights can be adjudicated unless the individual
14   expressly consents in writing to join the action.
15          THE COURT:  Right.  Correct.
16          MR. BOUDREAU:  If you allow a Rule 23 opt-out class,
17   you're going to have state law claims which are parallel to the
18   federal claims, and this is why I think *Ansoumana* somewhat
19   supports this point, your Honor.  You in *Ansoumana* said,
20   indeed, it would be difficult to try them separately for the
21   findings in one case would tend to be preclusive as to the
22   other.  And so what would happen is, an absent class member --
23   let's take a California plaintiff -- or maybe California
24   wouldn't be the best.  Let's take a Pennsylvania plaintiff,
25   where the exceptions are the same.  A Pennsylvania plaintiff

72S1COUC

 1    who does not opt into the case, so he's not a member of the

 2    216(b) class but is a member of the Rule 23 class, when the

 3    Rule 23 judgment comes down, his claim will be adjudicated.

 4    The issue of preclusion, that result, that Rule 23 judgment,

 5    will preclude him effectively from ever relitigating under

 6    216(b).

 7              THE COURT:  I don't accept the argument, for the same

 8    reason I don't accept the previous argument.  In *Ansoumana*,

 9    because of the very close harmony in the two situations of the

10    state cause, that cause of action and the federal cause of

11    action, I held the way I did.  But given four different states,

12    possibly five, with the proposed amendment, and federal law,

13    and covering totally different kinds of employees, different

14    range of situations, the problem is not preclusive effect on

15    judgment, the problem is manageability.  In order to avoid the

16    problem of collateral estoppel the way you mention it, it

17    becomes very important for the judge to rule in very distinct

18    fashion what rulings are made under federal law and what

19    rulings are made under state law.  That makes this kind of

20    cause of action extremely difficult to manage.  It's on that

21    basis that I see the distinction, not the basis that you

22    mentioned.

23              I'd like to ask you this question:  If I don't make

24    this ruling now because of the hesitancy I expressed earlier,

25    when is the next time I can make this ruling when there's a

16

72S1COUC

1   motion for class certification?

2          MR. BOUDREAU:  I would expect when there is a motion

3   for class certification, your Honor, I will assume that that

4   motion would have to be under Rule 23.

5          THE COURT:  And in the meantime, there would be

6   discovery, which would bring out many of the points that you're

7   bringing up now.

8          MR. BOUDREAU:  That's possible, your Honor, but bear

9   in mind, when we were at the scheduling conference before, it

10  was the plaintiff's intent to file a motion for conditional

11  certification under 216(b) right away --

12         THE COURT:  Well, I wouldn't grant it.

13         MR. BOUDREAU:  -- and then wait --

14         THE COURT:  I wouldn't grant it if there was this

15  uncertainty because it just makes things too complex.

16         All right.  Let me hear from Mr. Spiro.

17         MR. SPIRO:  I'm not sure which to address first, your

18  Honor.

19         THE COURT:  Well, you choose, Mr. Spiro.  That's one

20  of the privileges counsel has.

21         MR. SPIRO:  Thank you.  I think, well, this motion is

22  a motion to dismiss, says so right in the beginning, and a

23  motion to strike combined, but what it's trying to do is

24  dismiss all of the state law causes of action, all the Rule 23

25  causes of action.

72S1COUC

1        THE COURT:  So far as they're class alleged.  They're

2    not motions to dismiss the actions of the individual plaintiffs

3    under state law as well as federal law.

4        MR. SPIRO:  That's correct, as I understand the

5    motion.  And the pleadings, there's nothing in the pleadings

6    that can justify the motion.  Counsel for Pfizer then

7    adverted -- well, adverted to -- when the Court said what it

8    said about the general principle of *Ansoumana*, then counsel for

9    defendant said, well, what we're then talking about is failure

10   to meet the criteria of Rule 23, and I think it meant 23(b)(3)

11   in particular.

12        And supplemental jurisdiction is the second thing

13   counsel mentioned.  Well, on the pleadings, in the pleadings,

14   there is nothing from which the Court can determine that

15   Rule 23(b) criteria are not satisfied.

16        THE COURT:  What's the point of expressing hesitancy

17   and in not ruling now when at a time the Rule 23 motion for

18   certification is made, we would have to deal with the same

19   points at that time?

20        MR. SPIRO:  Because --

21        THE COURT:  What's to be gained?

22        MR. SPIRO:  Well, the hesitancy in not ruling now?

23        THE COURT:  Correct.

24        MR. SPIRO:  Well --

25        THE COURT:  Let's say I accept that argument and the

72S1COUC

1   hesitancy I expressed earlier and saying, on the face of the

2   complaint arguably Rule 23 is satisfied, I can't strike the

3   allegations on a Rule 12(b) motion.  The answer was twofold:

4   one, as supplied by Mr. Boudreau, who said this is also a

5   motion under Rule 23(d) and pointing to this express language

6   of enabling the judge to deal with a complaint; and the second,

7   my own in saying I would have to deal with the same criteria

8   when a motion for certification were made under Rule 23.

9       The arguments that Mr. Boudreau makes are not

10  necessarily fact based.  They are arguments based on reasonable

11  implications drawn from the pleadings themselves.  So all of

12  the scope is wider than is usually the case under a Rule 12(b)

13  motion, given Rule 23(d) and the kinds of arguments that are

14  made.  In the Court's own experience in dealing with these

15  kinds of allegations, I may be able to make those findings.

16      Frankly, I am disposed, Mr. Spiro, not to change my

17  mind from *Ansoumana* but to distinguish the fact pattern from

18  *Ansoumana* and to rule that the fact pattern presented in your

19  pleadings is much too complex and much too diverse and much too

20  difficult to manage to suggest an opt-out class would be

21  available.

22      MR. SPIRO:  I understand, your Honor.  Thank you.

23  That focuses me better.

24      This complaint alleges the state laws of only four

25  states.  There is a case whose name I can't remember -- if

72S1COUC

1    somebody can give it to me -- in the Second Circuit here, it's

2    a district court case, in which an FLSA claim and the claims of

3    nine different states were certified.  There is the case --

4         THE COURT:  Who was the judge?

5         MR. SPIRO:  I'll have to find it.  Somebody help me

6    with it?  Sorry.  I don't have it.  I'll find it in a moment.

7    There's also -- I'll find that.  I can look at my notes.

8    Pardon me.  My memory for names is not the best.

9         There's also the farmers litigation in -- well, it's

10   actually a multidistrict litigation in California, farmers

11   overtime class litigation, in which the judge there in the

12   District of Oregon certified a case under the FLSA and seven

13   different states.  Going back to the specific complaint here --

14        THE COURT:  So you have a district court decision in

15   Oregon and a district court decision in the Southern District

16   of New York.  But there's a great deal of discretion that is

17   involved in certifying the Rule 23 class.  And it may be that

18   those judges have much greater capability than I do.

19        MR. SPIRO:  I understand, your Honor.  To that I would

20   say this:  What we're talking about here as far as Rule 23, I

21   think what the defendant is getting at is the predominance of

22   common issues.

23        THE COURT:  I'm sorry?

24        MR. SPIRO:  Predominance of common issues.  In other

25   words, counsel's talking about, oh, we've got four states and

72S1COUC

1    then counsel, for some reason I can't -- well, that I disagree

2    with, I won't say I can't understand -- is talking about 50

3    states.  There is no question about 50 states in this case.

4         THE COURT:  I brought up the issue.  I was worrying

5    that rulings in four states would possibly create a

6    discriminatory treatment as between those four and the 48

7    others, and in combination with the Fair Labor Standards Act,

8    it makes the problem more acute.  This is not a simple pattern.

9    This is not a group of delivery employees or West African

10   employees who may or may not have valid immigration status in

11   this country working below wage for several supermarket chains

12   in the city and state of New York.  These are people who earn a

13   lot more money than that working in various sales capacities in

14   different places, spread through different areas, supervised by

15   different offices, presenting much more complex problems.  I

16   don't feel I can manage that.  I don't feel the commonality of

17   issues predominates over the specific issues in each particular

18   office and perhaps with many different employees, some of whom

19   work out of their homes, some of them don't, some of them

20   report to offices on weekly bases, some -- I don't know these

21   things, but I know the variety of supervisory treatment in

22   American industry.  There is something.

23        MR. SPIRO:  The Court just said something that -- I

24   don't mean to challenge the Court's words back at it --

25        THE COURT:  Don't worry, Mr. Spiro.  You can freely

72S1COUC

1  challenge me.

2          MR. SPIRO:  All right.

3          THE COURT:  I only have wisdom when the Second Circuit

4  affirms me.

5          MR. SPIRO:  That can't be true.  There's always the

6  Supreme Court.

7          The Court said something that perked up my ears,

8  frankly.  And the Court moved its hands up and said, these

9  things, I'm not sure, I don't know, but these things may be

10  true.  Now that's why this motion shouldn't be ruled on and --

11  at least it shouldn't be granted at this stage in the

12  litigation.

13          THE COURT:  But as I asked you before, what profit is

14  there to postpone the ruling and to stay your ability to

15  proceed under the Fair Labor Standards Act?  Which I will do; I

16  will not let you go forward with the Fair Labor Standards Act

17  until I know what the situation is with the state law.

18          MR. SPIRO:  Well, the profit is that there are four

19  valid claims for relief for four different states that should

20  not be dismissed on the basis of the pleadings here that the

21  Court can only know --

22          THE COURT:  So answer my question.  What profit is

23  there to postpone this issue to a Rule 11 certification, which

24  will come 30 days from now on much the same record?

25          MR. SPIRO:  Well, there's two answers to that.  There

72S1COUC

1   is no profit if the Court is -- if the Court denies the motion,

2   in other words, rules in plaintiff's favor.  Because then the

3   state law claims for relief will go forward.

4          THE COURT:  Well, given my belief as I've expressed

5   that this is not suitable for class action treatment on an

6   opt-out basis and the likelihood therefore being that I will

7   deny a motion for certification, what profit would there be?

8          MR. SPIRO:  There's a great deal of profit.  What will

9   happen then is that the -- well, here, let me make two points.

10  First of all, at the outset, the claims for relief, on the

11  Rule 23 claims for relief in four different states will be

12  gone.  These people will not have their right in this Court, at

13  least, to vindicate their Rule 23 relief.  And --

14         THE COURT:  Not true.  The particular plaintiffs will.

15         MR. SPIRO:  That's true.  The classes won't.

16         THE COURT:  But those who opt in will.

17         MR. SPIRO:  That's -- but not entirely, no, they

18  won't.

19         THE COURT:  We don't actually know that.  We don't

20  know what that rule will be.  But I think, as I remember the

21  proceedings in Ansoumana, anyone who opts in becomes a party to

22  the action and the parties to the action have an ability to

23  have all their claims adjudicated.  The likelihood is that they

24  would qualify under Section 1367 and so I would have to

25  adjudicate their claims not only under the Fair Labor Standards

72S1COUC

1   Act but the state claims well.  I'm not sure of that.  I don't

2   know if you thought about that, Mr. Boudreau.

3       MR. BOUDREAU:  Yes, your Honor.  You have discretion

4   to do exactly what you just said.

5       THE COURT:  So what we're talking about is a more

6   manageable situation with specific plaintiffs who have opted in

7   than in the more elusive situation of those who have not opted

8   out.

9       MR. SPIRO:  Well, your Honor, that seems far less

10  manageable.  In other words, if we're talking about a --

11      THE COURT:  Well, Mr. Spiro, I'm firm on that.  If

12  there are named parties, it's more manageable.  The

13  manageability difficulties come when you don't know really what

14  you have, and we would not know what we have in a class that

15  potentially is 10,000 in number.

16      MR. SPIRO:  Well, your Honor, if I understand it, in a

17  class action, the manageability of -- in fact, the very

18  justification for a class action is that something like

19  exemption from the overtime laws can be determined for a large

20  number of people by ways, by expedited means that the Court can

21  fashion, that the Court has enormous discretion to fashion,

22  representative evidence and the like can be determined for

23  large numbers of people as compared to determining them person

24  by person by person.  And that's the whole idea -- maybe not

25  the whole idea, but certainly a major idea of a class action.

72S1COUC

1          THE COURT:  It depends on the people involved.  It

2     depends what they do, depends how you work, depends how the law

3     is framed.

4          MR. SPIRO:  Let me say this:  There is right now --

5     well, let me go to the laws in question.  There is nothing in

6     the pleadings that states or shows that the exemptions in the

7     four different states are in any significant or unmanageable

8     way different from the exemptions under the Fair Labor

9     Standards Act.  I'm quite familiar with the California

10    exemptions, and there is only one significant difference, which

11    is that on some of the exemptions there is a time-based

12    component, in other words, if you're working 50 percent of your

13    time doing the nonexempt work, that is -- that happens in every

14    single California FLSA and Rule 23 class action.  And the great

15    majority of the cases in California, one that even came down

16    this month, held that both could proceed together.  Counsel

17    cited two or three cases from California from the Ninth Circuit

18    district courts that held to the contrary, but the large

19    majority of cases in the Ninth Circuit held that both can go

20    forward.

21          In any event, the point is that on the law, there's

22    nothing in the pleadings, and there can't be anything until

23    it's briefed for the Court, to show that the issues of law here

24    are something that's in any way difficult for the Court to

25    manage.  And I believe that they are not.  But I can't

72S1COUC

1    demonstrate that to you in the pleadings.  And in fact

2    defendants, defendant in its motion and particularly in its

3    reply does not say anything specific about what is different

4    between the state law exemptions and the federal exemptions

5    except to mention, I believe it's four things: statute of

6    limitations -- I have them listed here somewhere.

7          THE COURT:  Rule extension, different statute of

8    limitations, different remedial provisions, different job

9    responsibilities.

10         MR. SPIRO:  Thank you.  I appreciate that.  And these

11   are conclusory remarks only, that the Court has nothing before

12   it to determine whether those differences actually do exist,

13   whether they are manageable or not manageable until the Court

14   could be briefed on what these differences are.  Now

15   difference --

16         THE COURT:  Supposing, Mr. Spiro, I would agree with

17   that.  When can you make a Rule 23 certification motion?  And

18   would it require discovery?

19         MR. SPIRO:  It would re -- yes, it would require some

20   discovery, yes.

21         THE COURT:  What discovery would you need?

22         MR. SPIRO:  We would need discovery of -- boy, I

23   wasn't ready to address this.  But I think I can tell at least

24   in a general way what discovery we would need.  We would want

25   discovery basically for corporate representatives under Rule

72S1COUC

1    30(b)(6) to determine, actually to verify what we're told by

2    our clients, that the job is, although named differently, as

3    we've stated in our complaint, is the same throughout the

4    country, to verify that --

5              THE COURT:  You mean the different covered persons

6    alleged in paragraph 2 are different names for the same thing?

7              MR. SPIRO:  That's right.  They're different names for

8    the same thing.  The defendant classified all of them as

9    outside salespeople.  They don't sell anything --

10             THE COURT:  What person would you need to tell you

11   that?

12             MR. SPIRO:  Whatever corporate representatives.  In

13   other words, I do --

14             THE COURT:  So we'd have discovery, we'd have

15   witnesses back and forth on what these titles mean?

16             MR. SPIRO:  On what the titles mean and more

17   particularly the fact that what they do on their jobs is highly

18   regularized, extremely regularized in part because of something

19   that counsel for Pfizer mentioned, because of the FDA and

20   Pfizer needing very dearly to comply with FDA laws and

21   regulations in the promotion of its product.  These people, our

22   clients, I will tell you, have said that, we act basically as

23   automatons.  It wasn't that way in many years past before

24   the --

25             THE COURT:  All right.  That would be relevant in

72S1COUC

1  relationship to a Rule 23 certification.  What other types of

2  discovery would you need?

3        MR. SPIRO:  We would need documentary discovery on the

4  company policies, and there are -- the company policies that

5  pertain --

6        THE COURT:  Regulating overtime for such people?

7        MR. SPIRO:  I wasn't getting at that.  I was getting

8  at regulating how these people do their work, because there are

9  very strict company policies on this, even strict --

10        THE COURT:  Same as we talked about before.

11        MR. SPIRO:  Yes.

12        THE COURT:  All right.  Mr. Boudreau, one of the

13  benefits of deferring ruling until a motion for certification

14  is made is that the decision becomes immediately appealable

15  under Rule 23(f).  I don't know if a ruling under 23(d)(4)

16  would be immediately appealable.  And certainly a ruling that I

17  would make on the basis of a limited discovery record would

18  have more meaning than ruling on the pleadings.  I do believe

19  that a ruling in your favor at this point might not stand

20  because of the sensitivity of the Second Circuit not to go

21  beyond the pleadings themselves.  I do agree that there has

22  been slippage from this rule and the most recent decision in

23  the Second Circuit in the securities class action field, Judge

24  Scheindlin's case requiring much greater fact finding on the

25  part of the court in terms of the merits than we previously

72S1COUC

1    thought we would be allowed, marks the possibility of a

2    different trend.  I feel, however, that there should be limited

3    discovery and a Rule 23 motion, and then I would make the

4    findings that I need to make either for or against class

5    certification.

6            In the meantime, the case would not proceed under the

7    Fair Labor Standards Act.  I would stay it so that I would

8    create a parallelism to the greatest extent possible under both

9    federal and state law.  I think that's my view now.

10           MR. BOUDREAU:  Excuse me, your Honor?

11           THE COURT:  I think that's my view now.

12           MR. BOUDREAU:  Well, your Honor, I think I go back

13   to -- and I think you made this point, but I don't think the

14   landscape is going to change at all.

15           THE COURT:  It may not.  But it will be a surer ruling

16   on the landscape, a surer demarcation of the posts and fences

17   that mark off the landscape.

18           MR. BOUDREAU:  And I can only say, your Honor, that

19   the trilogy, the Kodak trilogy of cases from the Western

20   District of New York dealt with this issue and went ahead and

21   did it on the 12(b) standard regardless.  And I would also say,

22   your Honor, a case that came down --

23           THE COURT:  Tell me about those cases.

24           MR. BOUDREAU:  It was the same argument made, your

25   Honor.  It was a multistate class action, and I think it was

72S1COUC

1    25 --

2              THE COURT:  Who was the district judge?

3              MR. BOUDREAU:  Off the top of my head, your Honor, I

4    don't know the judge, but I can tell you in a minute.  Telesca.

5    And there were essentially three companion cases.

6              THE COURT:  We won't have much trouble following Judge

7    Telesca.

8              MR. BOUDREAU:  And it was 25 states.

9              THE COURT:  And what did he hold?

10             MR. BOUDREAU:  Supplemental jurisdiction grounds, your

11   Honor, that there was no way to manage it moving forward, it

12   was too big a mess.  And --

13             THE COURT:  He made those findings under Section 1367

14   and not under Rule 23?

15             MR. BOUDREAU:  That's my understanding, your Honor.

16   And the thing there was, the plaintiffs argued, your Honor,

17   that the motion was premature because they needed more

18   discovery.  And he basically says, look at 23(c)(1) because

19   23(c)(1) now promotes the speedy class resolution.  Indeed,

20   many district courts have entered 90-day orders.  I think

21   you've got to file for class certification within 90 days,

22   often prohibiting any significant real discovery to be made.

23             Now I would also say, your Honor, and just to make you

24   aware of this --

25             THE COURT:  Well, it was always the rule that you had

72S1COUC

1    to make a motion quickly, but quickly is subject to a lot of

2    things.

3         MR. BOUDREAU:  Exactly.  As soon as practicable is

4    always used, and I still don't know if practicable is a word.

5    And again, many district courts have entered a rule now, 90

6    days.  But regardless, he rejected the idea that further

7    discovery would do anything because he was dealing with 25

8    states, et cetera.  And I think it's important here, your

9    Honor, to look at the complaint in this case because the class

10   definition applies to covered employees.  Covered employees is

11   defined in the complaint to be all persons who have been, are

12   or in the future will be employed by any of the defendants in

13   any job whose title is or was referred to in any of the

14   following -- the seven job titles.

15        THE COURT:  Mr. Boudreau, I would not have much

16   trouble diminishing that scope.  But that wouldn't really get

17   to the heart of the problem.  The parties have not briefed

18   Section 1367(c).  1367(c) provides that the district courts may

19   decline to exercise supplemental jurisdiction over a claim

20   under subsection (a) if the claim raises a novel or complex

21   issue of state law; the claim substantially predominates over

22   the claim or claims over which the district court has original

23   jurisdiction; in exceptional circumstances there are other

24   compelling reasons for declining jurisdiction.  So the

25   subparagraphs (1), (2) and (4).

72S1COUC

1           MR. BOUDREAU:  Your Honor --

2           THE COURT:  The problem with ruling under 1367(c) is

3  that it pertains also to the individual supplemental claims.

4           MR. BOUDREAU:  Correct.

5           THE COURT:  And your focus is only on the class

6  claims.  I don't really think that's a 1367 argument.  Judge

7  Telesca may have found that.  I don't think I'd go that way.

8           MR. BOUDREAU:  I was going to say, the parties have

9  argued 1367, your Honor.

10          THE COURT:  They have.  I understand that.  I retract

11  what I said.  But as I say, I'm not content to make this a

12  ruling under Section 1367.  I have to focus on Rule 23.

13          All right.  I'm going to rule, folks, that the motion

14  is denied, with leave to renew in the context of a Rule 23

15  class certification.

16          I'm not ruling on the merits.  I want to make that

17  very clear.  Indeed, as I think my remarks can fairly be

18  understood, I am concerned that I will not be able to manage

19  the class claims in the opt-out classes under state law with

20  the opt-in classes under Title 29, the Fair Labor Standards

21  Act.  There are important distinguishing considerations between

22  this case and the *Ansoumana* case.  And I need to have those

23  developed and explored in limited discovery.  It will more

24  focus the briefing than exists at this point in time.

25          So that's my ruling on the present motion.  As I said

72S1COUC

1    before, the proceedings under the Fair Labor Standards Act

2    would be stayed until such time as I'm able to rule on the

3    certification issues under Rule 23.

4          Let us go off the record for a few minutes and discuss

5    what are the next steps, and we'll recap this on the record.

6    Well, we can stay on the record, actually.  Let me discuss a

7    few points, and we'll see if we can do this on the record.

8          Mr. Spiro has discussed the elements of discovery that

9    he thinks he needs.  Mr. Boudreau, do you have any ideas about

10   discovery that you might need?

11         MR. BOUDREAU:  Well, yes, your Honor.  We would want

12   to depose all the named plaintiffs.

13         THE COURT:  Four?

14         MR. BOUDREAU:  Five.

15         THE COURT:  Five.

16         MR. BOUDREAU:  And then there's additional four

17   opt-ins on top of that.

18         THE COURT:  I don't know that you need to do all

19   those.  I think three would be sufficient.

20         MR. BOUDREAU:  Well, your Honor, I'm trying to capture

21   all the state law claims and there's -- the plaintiffs have

22   already --

23         THE COURT:  Yes, but those are legal arguments,

24   they're not factual arguments.  You may ask me for more if you

25   don't get enough information out of the three, but I'd like you

72S1COUC

1    to focus on three and then tell me if you need more.

2             MR. BOUDREAU:  Do you mean four, your Honor?

3             THE COURT:  Three.

4             MR. BOUDREAU:  So we're down to three now.

5             THE COURT:  Three out of five.  Look, if you want to

6    take five, it's okay too.  I'm not really going to hold you to

7    three.  But the point I'm making is, I don't want this to be an

8    elaborate discovery program.  I want it to be economic,

9    efficient, concise and leading to the motion where I can make

10   my decision and then both sides can try to appeal to the Court

11   of Appeals.

12            MR. BOUDREAU:  The plaintiffs have recently --

13            THE COURT:  Second Circuit has not spoken on this

14   issue.

15            MR. BOUDREAU:  The plaintiffs have recently propounded

16   discovery, including a deposition notice, and I would assume

17   that that is aimed at the very issues you're talking about.  So

18   I think there's already a written record on it.

19            THE COURT:  Well, I think you ought to get together

20   and come up with a program and tender it to me to be so

21   ordered.

22            MR. BOUDREAU:  Okay.

23            THE COURT:  See if you can limit your scope.  Work

24   with Mr. Spiro and Mr. Joseph and try to find out enough about

25   the plaintiffs from their informal discussions so you can get a

72S1COUC

1    spread of information without taking everybody.  And I want

2    both sides to be efficient here.  Why don't you meet and confer

3    about these issues and see if you can tender to me a discovery

4    plan only for the purpose of making the motion for

5    certification, including a briefing schedule on this motion for

6    certification.  I would like to have all this done within 45

7    days.  If you need more time, you'll ask me for more time, but

8    I make this point because I want it constricted.  More

9    efficient as well.

10           MR. SPIRO:  You meant all the discovery done within 45

11   days?

12           THE COURT:  And the motion briefing as well.  If you

13   can do it.  You don't need 30 days to get all this discovery.

14   I mean, you don't need every single piece of paper in the

15   company.  Class certifications can be revisited.  But I think

16   it's important -- you want to get on with your case no matter

17   what, Mr. Spiro, and the delay is going to be built in by this

18   opt-out class, it's going to be significant no matter what we

19   do, so I'd like to try to keep it within bounds.  There may be

20   an appeal.  Rule 23(f) allows both sides to try to convince the

21   Court of Appeals to take an appeal on this issue.  Experience

22   teaches that when you ask the Court of Appeals, it takes two

23   months to get an answer, maybe even longer.  At this point they

24   are bogged down with a lot of cases.

25           So there's a built-in period of delay that is going to

72S1COUC

1    afflict this situation no matter what.  The more I can create a

2    constricted period within which you can operate, the shorter

3    period of time for the delay.  Because if you are right, there

4    are people who will have the remedy, and the longer they wait

5    for the remedy, the more difficult it will be.

6            There's not going to be any settlements within this

7    period of time, unless it's for the named plaintiffs only.

8    There will be no class settlement in this period.

9            Okay.  Anything else I need to rule on?

10          MR. JOSEPH:  In the event of any discovery disputes,

11    will they come before this Court, given the --

12          THE COURT:  The procedure I have under Rule 2(e) of my

13    individual rules, that will give you an opportunity to give me

14    a joint letter, and if I can do it, I will give you 24-hour

15    turnaround on the ruling.

16          MR. SPIRO:  There is one question I have, your Honor.

17          THE COURT:  If you can't get together on a discovery

18    plan, you'll write me a joint letter which will append a

19    jointly proposed with alternatives order so I can see which

20    side is proposing which idea, and I'll create an order on the

21    basis of this procedure.  This procedure cuts out sequential

22    letters.  The problem with sequential letters is you never know

23    which is the last one.  So there's one shot.  And it also

24    promotes conferring about what you're doing, and in my

25    experience many disputes are resolved before they even reach

72S1COUC

1      me.

2              Okay.  All right.  Get together, create a discovery

3      plan for this, tender it to me with an order, and we'll go

4      forward.

5              MR. SPIRO:  I have one question.

6              THE COURT:  Yes.

7              MR. SPIRO:  The Court said motion for class

8      certification within 45 days.  But the Fair Labor Standards Act

9      case is not proceeding.  Does this mean that we do not make a

10     motion under the *Hoffmann-La Roche* case for initial

11     certification and notice?

12             THE COURT:  Yes, that you do not.

13             MR. SPIRO:  We do not.

14             THE COURT:  Right.  Because I'm not going to have

15     several notices, there will be one notice.  If you win on the

16     opt-out class, the notice for the opt-out class and the notice

17     for opt-in class will be the same.  That's what I did in

18     *Ansoumana*, it worked; I will do the same here.

19             MR. SPIRO:  Thank you.

20             MR. JOSEPH:  Thank you.

21             THE COURT:  There will be no proselytizing the class,

22     no conversations with potential class members about this

23     lawsuit.  By either side.

24             MR. SPIRO:  Well, I do have a question about that.

25     Well, I guess it's mutual.

72S1COUC

1      THE COURT:  It's mutual because I have to see the

2  notice and regulate it.  And without a notice, we'll not have

3  it.  I can't prevent and I will not prevent the defendant from

4  ordinary job-related communications with people in the various

5  functions alleged in paragraph 2 of the complaint, but they

6  will refrain from any discussions having to do with this

7  lawsuit.  If asked, the answer is, the judge did not allow me

8  to answer.

9      MR. JOSEPH:  Your Honor, people call my office on a

10  fairly regular basis who are potential plaintiffs in this case.

11      THE COURT:  The answer is, I'm not allowed to talk to

12  you, until the judge gives me permission.

13      MR. JOSEPH:  And we currently have advertising

14  running.

15      THE COURT:  It's not to be.

16      MR. JOSEPH:  We should turn off the advertising?

17      THE COURT:  Yes, sir.  There are no communications.

18  If you want communications, you'll be outcommunicated.

19      MR. JOSEPH:  I understand, your Honor.  And just to be

20  clear, we have periodically issued press releases as the --

21      THE COURT:  You will not issue press releases.  You

22  will not communicate.

23      MR. JOSEPH:  All right.

24      MR. SPIRO:  In other words, not even publicly.  I

25  understand.

72S1COUC

| | |
|---|---|
| 1 | THE COURT: You will not communicate. |
| 2 | MR. JOSEPH: Your Honor, I'm sorry, one last question. |
| 3 | We have about 12 or 15 of these cases. Some are in California, |
| 4 | some are before four different judges. I assume then that |
| 5 | the -- |
| 6 | THE COURT: Based on the same fact pattern? |
| 7 | MR. JOSEPH: Yes. But I assume then that this ruling |
| 8 | applies to no communication with Pfizer reps; therefore, I |
| 9 | would assume that any press release that does not mention |
| 10 | Pfizer would be okay. |
| 11 | THE COURT: Pfizer is in my court. The other cases |
| 12 | you talk about reflect other drug companies? |
| 13 | MR. JOSEPH: Correct, your Honor. |
| 14 | THE COURT: All right. I'm not dealing with those |
| 15 | drug companies. |
| 16 | MR. JOSEPH: The advertising is not directed towards |
| 17 | Pfizer in particular. |
| 18 | THE COURT: I'm not going to get into all the things |
| 19 | that you do. You've heard my rulings, you understand my |
| 20 | rulings. I don't think you want to come up here on a contempt |
| 21 | motion. |
| 22 | MR. JOSEPH: Thank you, your Honor. |
| 23 | MR. SPIRO: You're quite right, your Honor. |
| 24 | THE COURT: Thank you. |
| 25 | MR. BOUDREAU: Thank you, your Honor. |

o0o

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

# EXHIBIT 4



U.S.DC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED 4/20/67

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ANTHONY COULTRIP, ROBERT : 
CHENAULT, DAVID HADLEY, DANA :   Case No. 06-cv-09952-AKH
HIGGS, and BENAIAS ALBARRAN, on :
behalf of themselves and others similarly :   Judge Alvin K. Hellerstein
situated, :

Plaintiffs, :

v. :

PFIZER INC., :

Defendant. :

## JOINT PROPOSED DISCOVERY PLAN AND BRIEFING SCHEDULING REGARDING PLAINTIFFS' MOTION TO CERTIFY THE STATE LAW CLASS

Pursuant to this Court's February 28, 2007 instruction and its April 12, 2007 Order Denying Leave to Withdraw Class Allegations, the parties to this action jointly propose the following discovery plan, at the end of which Plaintiffs will file a motion for Rule 23 class certification of the state law claims in the case.

### A. Written Discovery Directed at Class Certification

1. The parties have each served interrogatories and requests for production of documents. Plaintiffs served document requests on February 7, 2007, March 9, 2007 and April 17, 2007; interrogatories on February 7, 2007 (withdrawn in light of the Court's February 28, 2007 ruling) and April 17, 2007; plaintiffs served today a response and objection to Defendant's document requests as well as partial production). The parties agree that they will serve all further written responses to discovery on or before Monday, April 30, 2007. The parties will physically produce any remaining documents in response to the above discovery on or before Monday, May

Firmwide:82350512.1 051034.1020                    1

7, 2007.

      2.      To the extent a party objects to any discovery request, the parties will meet and confer in an effort to resolve the dispute without court intervention. In the event the parties cannot reach agreement on the subject discovery dispute, the parties will submit any such dispute to the Court in accordance with its standing orders and practices. Any such disputes regarding class-based written discovery shall be jointly submitted to the Court on or before Friday, May 18, 2007.

      3.      On or before Friday, May 4, 2007, and consistent with the Federal Rules of Civil Procedure, the parties agree to meet in person and confer regarding electronic discovery and to establish a written electronic discovery plan. To the extent there are any disputes regarding electronic discovery that bear on class-based discovery, the parties will submit any such dispute to the Court in accordance with its standing orders and practices on or before Friday, May 30, 2007.

**B.      Depositions Directed at Class Certification**

      1.      Plaintiffs shall complete the 30(b)(6) deposition session(s) of Defendant (noticed on February 7, 2007) in New York, NY on or before June 15, 2007. This deposition is to be focused on the duties and responsibilities of potential class members; training (including selling aids, role playing, scripts and the like; and corporate structure and divisions, and other matters relevant to defining the proper class).

      2.      Defendant shall depose the five named Plaintiffs on or before June 15, 2007.

      3.      Plaintiffs reserve the right to depose up to four regional and/or district sales managers in the relevant states. Whether depositions of these management employees will be

necessary is presently unknown. To the extent Plaintiffs eventually deem such depositions necessary, such depositions shall be completed on or before Friday, June 29, 2007. Such depositions shall take place at the witnesses' place of business or residence, unless Defendant deems New York, NY to be a more convenient location.

      4.      The parties recognize that the above plan may need to be altered depending on witness availability and whether witnesses have the knowledge they are designated to have under Rule 30(b)(6) as well as certain other factors. The parties agree that they will work together to resolve and/or minimize any disputes regarding such matters and will not involve the Court unless absolutely necessary. To that end, in the event the parties cannot reach agreement on a dispute concerning the above-reference depositions, the parties will jointly submit such dispute in writing to the Court on or before Friday, July 6, 2007.

      5.      In no event shall any of the discovery referenced in this Joint Discovery Plan and Briefing Schedule extend beyond July 13, 2007, unless agreed to by the parties or ordered by the Court.

**C.    Motion for Rule 23 Class Certification**

      1.      Plaintiffs will file their Motion(s) for Rule 23 Class Certification on or before Friday, June 30, 2007.

      2.      Defendant will file its Opposition to Plaintiff's Rule 23 Motion on or before Wednesday, July 18, 2007.

      3.      Plaintiffs will file their papers in reply to Defendant's Opposition on or before Tuesday, July 31, 2007.

      4.      The Court will hold oral argument on the Motion on ~~, 2007~~ *a date to be set.*

Respectfully submitted,

_Charles Joseph (CJ-9442)_
Attorneys for Plaintiffs
JOSEPH & HERZFELD
757 3RD Avenue
New York, NY 10017-2013
Telephone: (212) 688-5640
Facsimile: (212) 688-2548

Ira Spiro
SPIRO MOSS BARNESS
11377 W. Olympic Bl., 5th Floor
Los Angeles, CA 90064
Telephone: (310) 235-2468
Facsimile: (310) 235-2456

George R. Kingsley
Eric B. Kingsley
KINGSLEY & KINGSLEY, APC
16133 Ventura Bl., Suite 1200
Encino, CA 91436
Telephone: (818) 990-8300
Facsimile: (818) 990-2903

ATTORNEYS FOR PLAINTIFFS

/s/ James N. Boudreau
James N. Boudreau (JNB-0585)
(Admitted _pro hac vice_)
LITTLER MENDELSON, P.C.
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA 19102
Telephone: (267) 402-3029
Facsimile: (267) 402-3131

A. Michael Weber
AMW(8760)
LITTLE MENDELSON, P.C.
885 Third Avenue, 16th Floor
New York, NY 10022-4834
Telephone: (212) 583-9600
Facsimile: (212) 832-2719

Lee Schreter
(Admitted _pro hac vice_)
LITTLER MENDELSON, P.C.
3348 Peachtree Road, Suite 1100
Atlanta, GA 30326
Telephone: (404) 233-0330
Facsimile: (404) 233-2361

ATTORNEYS FOR PFIZER INC.