1  **Fernando Oblitas-Rios v. Pfizer, Inc.**
2  **U.S. District Court (Southern) Case No. 06-CV-2679 (BTM)**
   **Exhibit Index for Notice of Lodgment of Exhibits in Support of**
3  **Pfizer's Motion to Transfer Venue**

4

5                                    **INDEX**

6                         **EXHIBITS "5" through "10"**

7

8  Exhibit 5:     Complaint filed by Plaintiff Ayisha Jeter in the *Jeter* case on November 16, 2006

9  Exhibit 6:     Plaintiff Jeter's Responses to Pfizer Inc.'s First Set of Interrogatories

10 Exhibit 7:     Letter from attorney Timothy D. Cohelan to Judge Hellerstein, dated May 1, 2007

11 Exhibit 8:     Information from website of Cohelan & Khoury (http://www.ck-lawfirm.com/class-
12                action-cases/pfizer/), as of May 14, 2007

13 Exhibit 9:     Letter from attorney Eric B. Kingsley to Judge Hellerstein, dated May 4, 2007

14 Exhibit 10:    Order Granting Defendant's Motion To Transfer, *Evancho v. Sanofi-Aventis U.S. Inc.*,
15                2007 WL 1302985 (N.D.Cal. May 3, 2007)

16 Exhibit 11:    Judicial Caseload Profile for the United States District Court for the Southern District
17                of New York, printed from http://www.uscourts.gov/fcmstat/ on May 14, 2007

18 Exhibit 12:    Judicial Caseload Profile for the United States District Court for the Southern District
19                of California, printed from http://www.uscourts.gov/fcmstat/ on May 14, 2007

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON
A PROFESSIONAL CORPORATION
501 W. Broadway
Suite 900
San Diego, CA 92101 3577
619 232 0441

CASE NO. 06-CV-2679 BTM (AJB)
LODGMENT OF EXHIBITS IN SUPPORT OF
PFIZER MOTION TO TRANSFER VENUE

# EXHIBIT 5

*SUPREME COURT OF THE STATE OF NEW YORK*
*COUNTY OF NEW YORK*
————————————————————X

AYISHA JETER, on behalf of herself and all others :
similarly situated,

                       Plaintiff,

         v.

PFIZER, INC.,

                    Defendant.

————————————————————X

NEW YORK
COUNTY CLERK'S OFFICE

NOV 16 2006

NOT COMPARED
WITH COPY FILED

Index No. 603984/2006

**CLASS ACTION**
**COMPLAINT**

Plaintiff Ayisha Jeter, on behalf of herself and all others similarly situated, by and through her attorneys, Beatie and Osborn LLP, as and for her Complaint against defendant, Pfizer, Inc., alleges as follows:

## NATURE OF THE CASE

1.    This is a "wage and hour" class action in which plaintiff Jeter claims that her employer, defendant Pfizer, failed to pay her and the other members of the class for overtime hours worked.

## JURISDICTION AND VENUE

2.    Jurisdiction is proper in this Court because defendant Pfizer has its principal office in New York County.

3.    Venue is proper in this Court pursuant to New York Civil Practice Law and Rules Section 503(c) because defendant Pfizer has its principal office in New York County.

## THE PARTIES

4.    Plaintiff Jeter is a resident of New York City, New York. At all times relevant to this action, Ms. Jeter has worked for Pfizer as a pharmaceutical representative.

1

5.     Defendant Pfizer, Inc. is a Delaware corporation with its principal place of business at 235 East 42nd Street, New York, New York 10017.  Pfizer is in the business of manufacturing prescription drugs and selling the same to through physicians, hospitals, and pharmacies within the State of New York and throughout the United States.

## STATEMENT OF FACTS

6.     In order to market and promote the various drugs it manufactures, Pfizer, like most of the big pharmaceutical companies, employs pharmaceutical "representatives," historically referred to as "detailmen," to meet with doctors and other medical professionals to educate them about the beneficial aspects of the drugs with the hope that the doctors would subsequently write prescriptions for those drugs for their patients.

7.     Plaintiff Jeter has been employed as a representative by Pfizer since November 30, 2001.  On July 15, 2006, Ms. Jeter relocated to New York City, where she continues to work for Pfizer in the capacity of a representative, although her title has been changed to "Specialty Representative."  In her position as a representative (including as a Specialty Representative), Ms. Jeter is and was primarily responsible for calling on assigned physicians and medical institutions to promote the various prescription drugs manufactured by Pfizer.

8.     As a representative, Ms. Jeter was and is frequently required to work more than 10 hours per day and regularly required to work more than 40 hours per week.

9.     Ms. Jeter was not paid for this work because, for compensation purposes, Pfizer classified Ms. Jeter as an "exempt" employee, meaning, among other things, that she was not entitled to overtime pay under the provisions of the New York State wage and hour laws governing overtime work and compensation.

2

10. Pfizer has unlawfully classified Ms. Jeter as exempt from overtime payments under New York law presumably on the ground that she and the other representatives engage in outside sales. However, at no time do the representatives directly or indirectly sell Pfizer products to doctors, hospitals, medical groups or pharmacies.

11. Despite the fact that Ms. Jeter has worked overtime hours, as defined by New York law, Pfizer has implemented a uniform policy and procedure that precludes the payment of overtime compensation to her.

12. As a non-exempt employee, Ms. Jeter should have been paid, and currently is entitled to be paid, at the rate of (i) the minimum wage for all hours worked in excess of 10 hours per day and (ii) one and one-half times her regular hourly rate for all hours worked in excess of 40 hours per week.

13. Pfizer has willfully refused to pay Ms. Jeter the required compensation for overtime hours worked, and has failed to keep time records as required by law.

14. Ms. Jeter brings this action on behalf of herself and a class defined as follows: all persons who were, are or will be employed by Pfizer as pharmaceutical representatives and positions having the same job duties within the State of New York at any time within the six year period prior to the date of the filing of this Complaint through the date of the final disposition of this action (the "Class Period") and who were, are, or will be improperly misclassified as exempt from overtime pay under New York law (the "Class").

15. Pfizer's practices violate the New York State wage laws plead herein. Ms. Jeter seeks injunctive and declaratory relief, overtime compensation for all overtime work required, suffered, or permitted by Pfizer, plus interest, attorneys' fees and costs.

3

16.   A parallel action has been commenced in California under California's wage and labor laws.  That case is styled <u>Fernando Oblitas-Rios, on behalf of himself and all others similarly situated, v. Pfizer, Inc., a California Corporation, and DOES 1-100, inclusive,</u> Case No. GIC 874925 and is pending in the Superior Court of the State of California, County of San Diego.

## CLASS ACTION ALLEGATIONS

17.   Plaintiff Jeter brings this action as a class action, on behalf of the Class defined in paragraph 14, pursuant to Article 9 of the New York Civil Practice Law and Rules.

18.   **Ascertainable Class:**  The proposed Class is ascertainable in that its members can be identified and located using information contained in Pfizer's payroll and personnel records.

19.   **Numerosity:**  The potential number of persons in the Class is so numerous that joinder of all members would be unfeasible and impractical. The disposition of their claims through this class action will benefit both the parties and this Court. The number of persons in the Class is unknown to plaintiff at this time. However, it is estimated that the number exceeds 100 individuals.

20.   **Typicality:** The claims of plaintiff Jeter (for overtime wages, interest and attorney's fees) are typical of the claims of all of the other members of the Class because all of them sustained similar injuries and damages arising out of Pfizer's common course of conduct in violation of law and the injuries and damages of all of the other members of the Class were caused by Pfizer's wrongful conduct as described in this Complaint.

21.   **Adequacy:** Plaintiff Jeter is an adequate representative of the Class; will fairly protect the interests of the other members of the Class; has no interests antagonistic to the members of the Class; and will vigorously pursue this suit via attorneys who are

4

competent, skilled and experienced in litigating matters of this type. Class Counsel are competent and experienced in litigating large employment law class actions.

22. **Superiority**: The nature of this action makes the use of the class action vehicle a particularly efficient and appropriate procedure to afford relief to plaintiff and the other members of the Class for the wrongs alleged herein, as follows:

    a. This case involves a large corporate defendant and a large number of individuals with many relatively small claims and common issues of law and fact;

    b. If each individual member of the Class was required to file an individual lawsuit, Pfizer would necessarily gain an unconscionable advantage because, with its vastly superior financial and legal resources, it would be able to exploit and overwhelm the limited resources of each individual member of the Class;

    c. Requiring each individual member of the Class to pursue an individual remedy would also discourage the assertion of lawful claims by the members of the Class who would be disinclined to pursue an action against Pfizer because of an appreciable and justifiable fear of retaliation;

    d. The prosecution of separate actions by the individual members of the Class, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual members of the Class against Pfizer; would establish potentially incompatible standards of conduct for Pfizer; would result in legal determinations with respect to individual members of the Class which would, as a practical matter, be dispositive of the interest of the other members of the Class who are not parties to the adjudications; and/or would substantially impair or impede the ability of the members of the Class to protect their own interests;

    e. The claims of the individual members of the Class are not sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses attending thereto;

    f. Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action; and

    g. The cost to the court system of adjudication of such individualized litigation would be substantial.

23. **Existence and Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to members of the Class which predominate over questions affecting only individual members of the Class, including, but not limited to, the following:

    a. Whether Pfizer improperly classified plaintiff Jeter and the other members of the Class as exempt from the overtime pay requirements of New York law;

    b. Whether Pfizer unlawfully failed to pay overtime compensation in violation of the New York Minimum Wage Act, New York Labor Law § 650 *et seq.*, the Wage Payment Act, New York Labor Law § 190 *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142;

    c. Whether Pfizer's conduct was willful under New York Labor Law § 663;

    d. Whether Pfizer unlawfully failed to keep and furnish plaintiff Jeter and the other members of the Class with records of hours worked, in violation of the New York Minimum Wage Act, New York Labor Law § 650 *et seq.*, the Wage Payment Act, New York Labor Law § 190 *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142; and

    e. Whether plaintiff Jeter and the other members of the Class are entitled to damages, and if so, the means of measuring such damages;

    f. Whether plaintiff Jeter and the other members of the Class are entitled to liquidated damages under New York Labor Law § 663; and

    g. Whether Pfizer is liable for attorneys' fees and costs.

24. Plaintiffs intend to send notice to all members of the Class to the extent required by Article 9.

### FIRST CLAIM FOR RELIEF

**(For Unpaid Overtime Under New York Labor Law, § 650 *et seq.*,
§ 190 *et seq.*, and 12 N.Y.C.R.R. Part 142)**

25. Plaintiff Jeter incorporates all preceding paragraphs of this Complaint.

26.    At all relevant times, Pfizer has been, and continues to be, an "employer" within the meaning of New York Labor Law § 651.

27.    At all relevant times, Pfizer has employed, and continues to employ, employees, including plaintiff Jeter and the other members of the Class.

28.    Plaintiff Jeter and the other members of the Class regularly worked more than 40 hours per week.

29.    New York labor laws requires an employer, such as defendant Pfizer, to pay overtime compensation to all non-exempt employees who work in excess of 40 hours per week.

30.    Plaintiff Jeter and the other members of the Class are non-exempt employees entitled to be paid overtime compensation for all hours worked in excess of 40 hours per week.

31.    At all relevant times, Pfizer had a policy and practice of failing and refusing to pay overtime pay to plaintiff Jeter and to the other members of the Class for their hours worked in excess of forty hours per week.

32.    The foregoing conduct, as alleged, violates the New York Minimum Wage Act, Labor Law § 650 *et seq.*, the New York Wage Payment Act, Labor Law § 190 *et seq.*, and the supporting Department of Labor Regulations, 12 N.Y.C.R.R. Part 142.

33.    Plaintiff Jeter, on behalf herself and the other members of the Class, seeks the amount of her underpayments based on Pfizer's failure to pay one and one half times the regular rate of pay for work performed in excess of forty hours per week, as provided by New York's labor laws, and such other legal and equitable relief from Pfizer's unlawful and willful conduct as the Court deems just and proper.

7

34.     Plaintiff Jeter, on behalf of herself and the other members of the Class, seeks recovery of attorneys' fees and costs of this action to be paid by Pfizer, as provided by New York Labor Law § 663(1).

35.     Plaintiff Jeter and the other members of the Class do not seek liquidated damages.

## SECOND CLAIM FOR RELIEF

### (For Spread-of-Hours Compensation Under New York Labor Law, § 650 *et seq.*, § 190 *et seq.*, and 12 N.Y.C.R.R. Part 142)

36.     Plaintiff Jeter incorporates all preceding paragraphs of this Complaint.

37.     At all relevant times, Pfizer has been, and continues to be, an "employer" within the meaning of New York Labor Law § 651.

38.     At all relevant times, Pfizer has employed, and continues to employ, employees, including plaintiff Jeter and the other members of the Class.

39.     Plaintiff Jeter and the other members of the Class regularly worked shifts of greater than ten hours per day.

40.     New York labor laws requires an employer, such as defendant Pfizer, to pay "spread of hours" compensation to all non-exempt employees who work in excess of 10 hours per day.

41.     Plaintiff Jeter and the other members of the Class are non-exempt employees entitled to be paid "spread of hours" compensation for each day that they worked in excess of 10 hours.

42.     At all relevant times, Pfizer had a policy and practice of failing and refusing to pay "spread of hours" compensation to plaintiff Jeter and to the other members of the Class for hours worked in excess of 10 hours per day.

43.    The foregoing conduct, as alleged, violates the New York Minimum Wage Act, Labor Law § 650 *et seq.*, the New York Wage Payment Act, Labor Law § 190 *et seq.*, and the supporting Department of Labor Regulations, 12 N.Y.C.R.R. Part 142.

44.    Plaintiff Jeter, on behalf herself and the other members of the Class, seeks the amount of her underpayments based on Pfizer's failure to pay "spread of hours" compensation for work performed in excess of 10 hours per day, as provided by New York's labor laws, and such other legal and equitable relief from Pfizer's unlawful and willful conduct as the Court deems just and proper.

45.    Plaintiff Jeter, on behalf of herself and the other members of the Class, seeks recovery of attorneys' fees and costs of this action to be paid by Pfizer, as provided by New York Labor Law § 663(1).

46.    Plaintiff Jeter and the other members of the Class do not seek liquidated damages.

WHEREFORE, plaintiff Jeter, on behalf of herself and all members of the Class, prays for relief as follows:

1.    certification of this action as a class action on behalf of the proposed Class;

2.    designation of the plaintiff Jeter as representative of the Class;

3.    a declaratory judgment that the practices complained of herein are unlawful under New York state law;

4.    appropriate equitable and injunctive relief to remedy Pfizer's violations of New York law, including but not limited to an order enjoining Pfizer from continuing its unlawful practices;

5.    an award of damages, exclusive of liquidated damages, to be paid by Pfizer, according to proof;

9

6.    pre-judgment and post-judgment interest as provided by law;

7.    attorneys' fees and costs of suit, including expert fees and fees; and

8.    such other injunctive and equitable relief as the Court may deem necessary, just and proper.

Dated: November 15, 2006

BEATIE AND OSBORN LLP

By: _Daniel Osborn_

Daniel A. Osborn
521 Fifth Avenue
34th Floor
New York, New York 10175
(212) 888-9000

*Attorneys for Plaintiff*

10

# EXHIBIT 6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                    :

AYISHA JETER, on behalf of herself and    :    Case No. 06-cv-15200-AKH
others similarly situated,             :

                    :    Judge Alvin K. Hellerstein

           Plaintiffs,    :

    v.                 :

PFIZER INC.,                 :

           Defendant.    :

                    :
---------------------------------------------------------------x

## PLAINTIFF JETER'S RESPONSES TO PFIZER INC.'S
## FIRST SET OF INTERROGATORIES

Plaintiff Ayisha Jeter hereby responds to defendant Pfizer Inc.'s First Set of Interrogatories as follows:

### GENERAL OBJECTIONS

In addition to the specific objections separately set forth in response to certain interrogatories, the interrogatories, as a whole, are subject to the following objections:

1.    Jeter objects to these interrogatories to the extent that they seek information that is protected by the attorney-client privilege.

2.    Jeter objects to these interrogatories to the extent that they seek information that is protected by the attorney work product doctrine.

3. Jeter objects to these interrogatories to the extent that they seek information that is not reasonably calculated to lead to the discovery of admissible evidence.

4. Jeter objects to these interrogatories to the extent that answering them would be unduly burdensome and/or expensive.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1. Jeter objects to all purported definitions and instructions to the extent that they seek to require production of documents, or to impose any obligations, beyond those permitted by the applicable Federal Rules of Civil Procedure and local rules of this Court.

2. Jeter objects to all purported definitions and instructions to the extent that they would require Jeter to respond to interrogatories not relevant to the subject matter of this litigation or are not reasonably calculated to lead to the discovery of admissible evidence.

3. Jeter objects to all purported definitions and instructions to the extent that they purport to require Jeter to reveal information protected by the attorney-client privilege, the attorney work product doctrine, the joint defense privilege, or any other applicable privileges or doctrines.

Jeter hereby incorporates its Objections to Definitions and Instructions into its response to each and every interrogatory.

## INTERROGATORIES

### INTERROGATORY NO. 1:

Identify all charges, claims, lawsuits or legal proceedings in which you were involved at any time and, with respect to each charge, claim, lawsuit or legal proceeding, including the agency or court with which the charge, claim, lawsuit or legal proceeding was filed and the docket or file number.

**RESPONSE**:

Plaintiff objects to Interrogatory No. 1 on the ground that it is vague and ambiguous, especially as to the term "involved." To the extent the Interrogatory seeks information about cases in which Jeter was a party plaintiff or party defendant, Jeter has not been "involved" in any charges, claims, lawsuits or legal proceedings.

**INTERROGATORY NO. 2:**

Identify each employer to whom you applied for a job since January 1, 2005 and, for each employer identified, including the position for which you applied, the date of your application, and the outcome of your application.

**RESPONSE**:

On March 1, 2007 plaintiff applied for a job with Aspen Education Services (Regional Sales Liaison). Because the opportunity was not a lateral move as anticipated, plaintiff declined the offer.

**INTERROGATORY NO. 3:**

Identify all current and former Pfizer employees with whom you have communicated regarding the allegations of the Complaint and/or your claims relating to misclassification and overtime compensation and give all such information as required by the Definitions, including, but not limited to:

(a) describe in full what was stated by each person involved in the communication;

(b) state whether you transcribed any statements as a result of or relating to such communications; and

     (c)    identify each and every document you gave to or received from any current or former employees identified above.

**RESPONSE**:

    Fernando Oblitas-Rios - Plaintiff discussed the phone calls received from Pfizer representatives in California who had heard about the suit. Plaintiff provided Mr. Rios with a printed copy of Pfizer policies and procedures, which are readily available to all employees on Pfizer's intranet site.

    Duraine Griffin- Plaintiff's former California co-worker. Griffin contacted plaintiff after an unknown individual in the regional office phoned him regarding a "legal action hold" electronic mail sent from Pfizer. Plaintiff explained that she could not discuss the action, but stated that she was the class representative in New York and that other actions have been filed. A similar conversation also took place with Frank Johnson, plaintiff's former district manager. Mr. Johnson contacted plaintiff to inquire about an electronic mail he received from Pfizer requesting that he turn over his computer. Plaintiff did not offer Mr. Johnson a response.

    Daniel Landolphi- Plaintiff's former co-worker. Plaintiff asked Mr. Landolphi if he too had received the "legal hold" electronic mail because of the previous calls plaintiff received from Messrs. Griffin and Johnson.

**INTERROGATORY NO. 4**:

    Identify the number of hours you worked each day during your employment with Pfizer as a Healthcare Representative or other "Covered Position," as defined in your Amended Complaint. If your daily hours are not reasonably ascertainable, identify the number of hours you worked each week. (For each day or week, if you are unable to state the exact number of hours

worked, provide a good faith estimate. Do not provide an average number of hours worked. This interrogatory specifically requests an exact number of the hours you worked each day or week of employment or a good faith estimate of those hours.)

**RESPONSE**:

The following work hours represent "field time" only for each position plaintiff has held at Pfizer:

- Chicago, IL: 7:30a.m.-5:00pm

- Los Angeles, CA: 8:00a.m.-5:00pm

- New York, NY: 8:00a.m.-5:00p.m.

In addition to requiring "field time" of approximately nine hours per day, Pfizer requires its representatives to communicate with its clients, plan events, input call activity, transmit activity ifinlogs to the physician database system, and participate in online training sessions, which takes approximately one to one and one-half hours each day.

Finally, plaintiff is also required to complete at least one Dinner Program or Doctor Dinner per week, which run from 6:00p.m until 10:00p.m., or approximately four hours. Plaintiff objects to this interrogatory because the specific request for the "exact number" of hours plaintiff worked each day or week is unduly burdensome and not reasonably ascertainable.

Plaintiff emphasizes that the healthcare and specialty representatives are not required to keep a journal or record of the hours worked each day. Any information plaintiff has in her possession that reflects weekly hours worked comes in the form of emails (date stamps during after hours logged into Pfizer's system) and notes concerning any Dinner Programs or Doctor Dinners.

All territory information, program information, and electronic mails are erased from

plaintiff's system by Pfizer every three months. Also, each time a representative is assigned a new

territory, his or her prior records are erased from their computer remotely, by Pfizer.

## INTERROGATORY NO. 5:

For each week of your employment for Pfizer as a Healthcare Representative or other

"Covered Position," as defined in your Amended Complaint, identify the numbers of hours you

worked at any fixed location or site, including, but not limited to, any home office. (For each week,

if you are unable to state the exact number of hours, provide a good faith estimate of the numbers

of hours worked in the week. Do not provide an average. This interrogatory specifically requests

an exact number of the hours you worked at any fixed location, such as Pfizer's office or your home,

each week of employment or a good faith estimate of those hours.)

## RESPONSE:

Plaintiff objects to Interrogatory No. 5 on the ground that it is vague and ambiguous,

especially as to the term "fixed location." Plaintiff worked "in the field," except as described in

Response to Interrogatory No. 4.

## INTERROGATORY NO. 6:

State all positions you held while employed by Pfizer, and for each position stated,

provide the following information:

        (a)    dates of your employment in said position;

        (b)    job duties performed in that position;

        (c)    who you reported to; and

        (d)    if you supervised employees, who you supervised.

**RESPONSE**:

Professional Healthcare Representative - (Los Angeles) November 30, 2001-July 31, 2003

Manager: Joe Blat.

Specialty Healthcare Representative(New York and Los Angeles) - August 1, 2003-present

Managers: Angela Gates; Keith Keller; Stacey Schlegel; Frank Johnson; John Colucci.

Plaintiff was and is responsible for developing psychiatrists into key opinion leaders to effectively market the appropriate use of Pfizer products through clinical data development and roundtable discussions throughout Southern California and New York, with the goal of gaining sales and market share for Pfizer neuroscience products.

Plaintiff also presents clinical data and market information to primary care and physician specialists to promote the appropriate use of Pfizer products (Lyrica, Aricept, Geodon, Xanax XR, Celebrex, Bextra, Zoloft, Zyvox, Vfend, and Diflucan).

Plaintiff also develops advocates for Pfizer products to play an important role in the education of other physician specialists and primary care physicians on the most current aspects of medical treatment.

There is not much difference between a Specialty Representative and Professional Healthcare Representative, except that a Specialty Representative is responsible for a larger territory containing only designated specialists.

Finally, plaintiff acted as interim supervisor for her California district from January 2005-June 2005 while her Manager, Angela Gates, was out on medical disability leave.

**INTERROGATORY NO. 7:**

For each "Covered Position," as defined in your Amended Complaint, that you held, identify your job duties, and for each job duty, give us a breakdown of the duties you performed on a daily basis and weekly basis in that position.

**RESPONSE:**

See plaintiff's response to Interrogatory No. 6.

**INTERROGATORY NO. 8:**

State the number of visits you made on a daily and weekly basis to doctors' offices, hospitals, and former, current, and/or prospective customers' offices.

**RESPONSE:**

In New York, plaintiff averages between eight to ten physician and clinic visits per day and one hospital call per day. During plaintiff's visits to hospital and large clinic settings, plaintiff details numerous clients ( pharmacists, residents, chiefs). Plaintiff is responsible for a weekly call cycle.

Plaintiff cannot calculate the number of daily and weekly visits she made while working in other territories, as plaintiff has been a Pfizer representative in multiple territories of multiple sizes in more than one state. When representatives change or are assigned new territories, they are no longer able to retrieve data related to prior territories.

**INTERROGATORY NO. 9:**

      Identify the dollar volume of sales credited to you on a weekly basis during your employment with Pfizer. If this number fluctuated during your employment, state the timeframes for such fluctuations and the reasons you believe that the fluctuations took place.

**RESPONSE**:

      Plaintiff does not have knowledge or information sufficient to respond to Interrogatory No. 9. Pfizer does not provide its representatives with weekly data for dollar volume of sales. Plaintiff receives a "sales by channel retail report" at the end of each month. This report summarizes prescriptions written on detailed products in plaintiff's territory for the prior month.

**INTERROGATORY NO. 10**:

      Identify all bases and reasons for your assertion in your Complaint that the class that you intend to represent is so numerous that joinder of all members is impracticable (i.e., numerosity), as required under Fed. R. Civ. P. 23(a).

**RESPONSE**:

      It is plaintiff's understanding that there are hundreds of pharmaceutical representatives in New York. Plaintiff is simultaneously producing an organizational chart for the New York Metro region for the Powers division.

**INTERROGATORY NO. 11**:

      Identify all bases and reasons for your assertion in your Complaint that there are questions of law or fact common to the class that you intend to represent (i.e., commonality), as required under Fed. R. Civ. P. 23(a).

**RESPONSE**:

All pharmaceutical representatives within New York perform essentially the same work and none of them are paid overtime.

**INTERROGATORY NO. 12**:

Identify all bases and reasons for your assertion in your Complaint that the claims or defenses of the representative parties are typical of the claims or defenses of the class that you intend to represent (i.e., typicality), as required under Fed. R. Civ. P. 23(a).

**RESPONSE**:

Plaintiff's claims and the claims of other class members all arise out of Pfizer's uniform policy of denying overtime compensation to pharmaceutical representatives.

**INTERROGATORY NO. 13**:

Identify all bases and reasons for your assertion in your Complaint that the representative parties will fairly and adequately protect the interests of the class that you intend to represent (i.e., representativeness), as required under Fed. R. Civ. P. 23(a).

**RESPONSE**:

Plaintiff understands her role as a class representative, especially her obligation to protect the interests of the absent class members.

**INTERROGATORY NO. 14**:

Identify all witnesses you intend to or may call at the trial of this matter.  For

(a)     identify all documents relating to each of the above-identified witnesses' testimony and whether or not you expect to introduce the documents at trial of this matter; and

(b)     describe the facts about which you intend to have each of the above-identified

witnesses testify.

**RESPONSE**:

Plaintiff has not yet identified any trial witnesses but will supplement this response

if and when such witnesses are identified.

Dated: May 4, 2007
     New York, New York

BEATIE AND OSBORN LLP

By:     Daniel O Osborn
     Daniel A. Osborn
521 Fifth Avenue, 34th Floor
New York, New York 10175
Telephone:   (212) 888-9000
Facsimile:   (212) 888-9664

# EXHIBIT 7

# COHELAN & KHOURY
## A PARTNERSHIP OF PROFESSIONAL LAW CORPORATIONS

### ATTORNEYS AT LAW

TIMOTHY D. COHELAN,* APLC
ISAM C. KHOURY, APC
DIANA M. KHOURY
MICHAEL D. SINGER•

(* Also admitted in the District of Columbia)
(• Also admitted in Colorado )

605 "C" STREET, SUITE 200
SAN DIEGO, CALIFORNIA 92101-5305
Telephone: (619) 595-3001
Facsimile: (619) 595-3000

www.cohelankhoury.com

KIMBERLY D. NEILSON
CHRISTOPHER A. OLSEN
PEGGY J. REALI
ALEXANDER I. DYCHTER•

May 1, 2007

**<u>Via First Class Mail</u>**
Honorable Alvin K. Hellerstein
Room 1050
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: **<u>Coultrip, et al. v. Pfizer, Inc.</u>**, Case No. 06 Civ. 9952 (AKH)
Related matter: <u>Oblitas-Rios v. Pfizer, Inc.</u>
United States District Court, Southern District of California
Case No. 06CV2679BTM (AJB)

Dear Hon. Judge Hellerstein:

The above-referenced matter, <u>Oblitas-Rios</u>, removed from the California Superior Court in December 2006, alleges claims for violations of California Labor Codes on behalf of a class of California workers employed by Defendant Pfizer, Inc. Recently, due to a "clerical oversight," pretrial activity was delayed, including the Early Neutral Evaluation conference which has now been set for June 4, 2007 in the Southern District of California (a copy of the Order setting the conference and relevant pleadings are enclosed).

It is my present intention to file class certification proceedings under Rule 23 in <u>Oblitas-Rios</u> on behalf of a pure California class grounded in proposed violations of the applicable labor laws of our state. We are of course fully prepared to coordinate the discovery required prior to class certification with related matters.

We are available upon reasonable notice to attend, participate, and discuss any matters that this court desires.

Sincerely,
COHELAN & KHOURY

Timothy D. Cohelan

TDC:aw
Enclosures
cc: See attached Service List

# SERVICE LIST
*Oblitas-Rios v. Pfizer, Inc.*
**U.S.D.C. Case No. 06CV2679 BTM (AJ B)**

Jeremy A. Roth, Esq.
Tina M. Fryar, Esq.
Michelle S. Park, Esq.
LITTLER MENDELSON
501 W. Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 232-0441

Counsel for Defendant

A. Michael Weber, Esq.
Michael P. Pappas, Esq.
LITTLER MENDELSON
885 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 583-2691

Counsel for Defendant

James N. Boudreau, Esq.
LITTLER MENDELSON
Three Parkway, 1601 Cherry Street, Ste. 1400
Philadelphia, PA 19102
Telephone: (267) 402-3029

Counsel for Defendant

Lisa A. Schreter, Esq.
LITTLER MENDELSON
3348 Peachtree Road, North East, Ste. 1100
Atlanta, GA 30326-1008
Telephone: (404) 233-0330

Counsel for Defendant

Roger R. Carter, Esq.
THE CARTER LAW FIRM
2030 Main Street, 13th Floor
Irvine, CA 92614
Telephone: (949) 260-4737

Counsel for Oblitas - Rios
Plaintiff

Charles E. Joseph, Esq.
D. Maimon Kirschenbaum, Esq.
Michael D. Palmer
JOSEPH & HERZFELD LLP
757 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 688-5640

Counsel for Coultrip Plaintiffs

George R. Kingsley, Esq.                    Counsel for Coultrip Plaintiffs
Eric Kingsley, Esq.
KINGSLEY & KINGSLEY
16133 Ventura Blvd., Suite 1200
Encino, CA 91436
Telephone: (818) 990-8300

Ira Spiro, Esq.                             Counsel for Coultrip Plaintiffs
Gregory N. Karasik, Esq.
SPIRO, MOSS & BARNESS LLP
11377 West Olympic Blvd., 5th Fl.
Los Angeles, CA  90064
Telephone: (310) 235-2468

Daniel A. Osborn                            Counsel for Jeter Plaintiff
BEATIE AND OSBORN LLP
521 Fifth Avenue
New York, NY 10175
Telephone: (212) 888-9000

# EXHIBIT 8

## CASE DETAILS: PFIZER

**Important documents:**

Copy of Complaint

Unpaid Overt
Salary Miscla
Expense Reir
Illegal Wage
Missed Break
Unpaid Comr
Other labor \

Misclassification actions in California and New York on behalf of Pharmaceutical Representatives who promote and market prescription drugs manufactured by Pfizer to physicians and hospitals for unpaid overtime and unprovided meal and rest periods.

(More details to come...)

**Do you believe you have a claim? Contact us**
*Time is of the essence - act today.*

What is a cla
What to look
Employment
Ten Biggest /
Employers

Countrywide

C&K in the P
C&K Publishe
Checklist for
Links

Cohelan & Khoury
605 "C" Street, Suite 200 · San Diego, California 92101-5305

# EXHIBIT 9

## KINGSLEY & KINGSLEY

A PROFESSIONAL CORPORATION
CITY NATIONAL BANK BUILDING
16133 VENTURA BOULEVARD, SUITE 1200
ENCINO, CALIFORNIA 91436
(818) 990-8300
FAX (818) 990-2903

GEORGE R. KINGSLEY
ERIC B. KINGSLEY
KEVIN M. ZIETZ
DARREN M. COHEN
ELARA R. LEVINE

May 4, 2007

Honorable Alvin K. Hellerstein
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
Room 1050
500 Pearl Street
New York, NY 10007

Re:    Coultrip, et al. v. Pfizer, Inc.
       Case No.: 06-CV-09952 (AKH)

       Related Matter: Oblitas-Rios v. Pfizer, Inc.
       United States District Court, Southern District of California
       Case No.: 06CV2679BTM (AJB)

Dear Hon. Judge Hellerstein:

As the Court knows, the undersigned, along with Joseph & Herzfeld LLP and Spiro Moss Barness LLP represent plaintiffs in Coultrip v. Pfizer, Inc., Case No. 06-CV-09952 (AKH), a nationwide Fair Labor Standard Act collective action and a Rule 23 class action for four states, California, Pennsylvania, Wisconsin, and Illinois. This letter pertains to the letter dated May 1, 2007 to the Court from attorney Timothy Cohelan. A copy of that letter is enclosed.

By way of background a short time after the Coultrip action was filed, the law firm of Cohelan & Khoury filed the Oblitas-Rios action in the Southern District of California. We have had discussions with Cohelan & Khoury, whom we know, concerning the two cases. We also discussed working together on the actions. At the same time, please note that Mr. Cohelan's letter was not written on behalf of us or plaintiffs in the Coultrip action, but only on behalf of Cohelan & Khoury and that firm's clients in the Oblitas-Rios action.

Mr. Cohelan's letter indicates that Cohelan & Khoury is prepared to file a motion for class certification in California. However, we, counsel for plaintiffs in the Coultrip action, fully intend to continue our work pursuant to the schedule set by the Court for the motion for class certification to be filed in this Court, and for discovery preceding the motion. That includes certification of the California class in this Court. Our work on discovery and other matters contemplated by the schedule is well under way.

# KINGSLEY & KINGSLEY

**A PROFESSIONAL CORPORATION**
**CITY NATIONAL BANK BUILDING**
**16133 VENTURA BOULEVARD, SUITE 1200**
**ENCINO, CALIFORNIA 91436**
**(818) 990-8300**
**FAX (818) 990-2903**

GEORGE R. KINGSLEY
ERIC B. KINGSLEY
KEVIN M. ZIETZ
DARREN M. COHEN
ELAAR R. LEVINE

Honorable Alvin K. Hellerstein
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
May 4, 2007
Page 2

Respectfully Submitted,

KINGSLEY & KINGSLEY, APC

By: _____
ERIC B. KINGSLEY

EBK/jh
encl.

SERVICE LIST
Coultrip, et al. v. Pfizer, Inc.
US District Court-Southern District of New York
Case No. 06-CV-09952-AKH

Jeremy A. Roth
Tina M. Fryaar
Michelle S. Park
LITTLER MENDELSON
501 W. Broadway, Suite 900
San Diego, CA 92101
(619) 232-0441
Counsel for Defendant

A. Michael Weber
Michael P. Pappas
LITTLER MENDELSON
885 Third Av., 16th Floor
New York, NY 10022
(212) 583-2691
Counsel for Defendant

James N. Boudreau
LITTLER MENDELSON
Three Parkway, 1601 Cherry St., Suite 1400
Philadelphia, PA 19101
(267) 402-3029
Counsel for Defendant

Lisa A. Schreter
LITTLER MENDELSON
3348 Peachtree Rd., North East, Suite 1100
Atlanta, GA 30326-1008
(404) 233-0330
Counsel for Defendant

Roger R. Carter
THE CARTER LAW FIRM
2030 Main St., 13th Floor
Irvine, CA 92614
(949) 260-4737
Counsel for Plaintiff Oblitas-Rios

Timothy D. Cohelan
COHELAN & KHOURY
605 "C" Street, Suite 200
San Diego, CA 92101-5305
(619) 595-3001
Counsel for Plaintiff Oblitas-Rios

Charles Joseph
D. Maimon Kirschenbaum
Michael D. Palmer
JOSEPH & HERZFELD LLP
757 Third Avenue, 25th Floor
New York, NY 10017
(212) 688-5640
Counsel for Plaintiff Coultrip

Ira Spiro
Gregory N. Karasik
SPIRO MOSS BARNESS
11377 W. Olympic Bl., 5th Floor
Los Angeles, CA 90064
(310) 235-2468
Counsel for Plaintiff Coultrip

Daniel A. Osborn
BEATIE AND OSBORN LLP
521 Fifth Avenue
New York, NY 10175
(212) 888-9000
Counsel for Plaintiff Jeter

# COHELAN & KHOURY

A PARTNERSHIP OF PROFESSIONAL LAW CORPORATIONS

### ATTORNEYS AT LAW

TIMOTHY D. COHELAN,* APLC
ISAM C. KHOURY, APC
DIANA M. KHOURY*
MICHAEL D. SINGER*

(* Also admitted in the District of Columbia)
(+ Also admitted in Colorado )

605 "C" STREET, SUITE 200
SAN DIEGO, CALIFORNIA 92101-5305
Telephone: (619) 595-3001
Facsimile: (619) 595-3000

www.cohelankhoury.com

KIMBERLY D. NEILSON
CHRISTOPHER A. OLSEN
PEGGY J. REALI
ALEXANDER I. DYCHTER*

May 1, 2007

Via First Class Mail
Honorable Alvin K. Hellerstein
Room 1050
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:   Coultrip, et al. v. Pfizer, Inc., Case No. 06 Civ. 9952 (AKH)
          Related matter: Oblitas-Rios v. Pfizer, Inc.
          United States District Court, Southern District of California
          Case No. 06CV2679BTM (AJB)

Dear Hon. Judge Hellerstein:

      The above-referenced matter, Oblitas-Rios, removed from the California Superior Court in December 2006, alleges claims for violations of California Labor Codes on behalf of a class of California workers employed by Defendant Pfizer, Inc. Recently, due to a "clerical oversight," pretrial activity was delayed, including the Early Neutral Evaluation conference which has now been set for June 4, 2007 in the Southern District of California (a copy of the Order setting the conference and relevant pleadings are enclosed).

      It is my present intention to file class certification proceedings under Rule 23 in Oblitas-Rios on behalf of a pure California class grounded in proposed violations of the applicable labor laws of our state. We are of course fully prepared to coordinate the discovery required prior to class certification with related matters.

      We are available upon reasonable notice to attend, participate, and discuss any matters that this court desires.

               Sincerely,
               COHELAN & KHOURY

               Timothy D. Cohelan

TDC:aw
Enclosures
cc: See attached Service List

# EXHIBIT 10

Westlaw.

Slip Copy
Slip Copy, 2007 WL 1302985 (N.D.Cal.)
**(Cite as: 2007 WL 1302985 (N.D.Cal.))**

Page 1

Only the Westlaw citation is currently available.

United States District Court,
N.D. California.
Lisa EVANCHO, et al., Plaintiffs,
v.
SANOFI-AVENTIS U.S. INC., and Does 1 to 10,
Inclusive, Defendants.
No. C 07-00098 SI.

May 3, 2007.

Charles Joseph, Attorney at Law, New York, NY,
George R. Kingsley, Darren M. Cohen, Eric B.
Kingsley, Kingsley & Kingsley, APC, Encino, CA,
Ira Spiro, Spiro Moss Barness LLP, Los Angeles,
CA, Aashish Yadvendra Desai, Mower, Carreon &
Desai, LLP, Irvine, CA, Claire Kennedy-Wilkins,
Jeffrey Lewis, Todd Jackson, Lewis, Feinberg, Lee,
Renaker & Jackson, P.C., Oakland, CA, Danielle
Evelyn Leonard, Michael Rubin, Rebekah B.
Evenson, Eve H. Cervantez, Altshuler Berzon LLP,
David Adam Lowe, John T. Mullan, Kenneth John
Sugarman, Steven Gary Zieff, Rudy Exelrod & Zieff,
LLP, Eve H. Cervantez, James M. Finberg, San
Francisco, CA, for Plaintiffs.

Rebecca D. Eisen, Eric Meckley, M. Michael Cole,
Morgan Lewis & Bockius, LLP, San Francisco, CA,
for Defendants.

**ORDER GRANTING DEFENDANT'S MOTION
TO TRANSFER**

SUSAN ILLSTON, United States District Judge.

*1 On April 27, 2007, the Court heard argument on
defendant's motion to transfer venue to the District of
New Jersey. Having considered the arguments of the
parties and the papers submitted, and for good cause
shown, the Court hereby GRANTS defendant's
motion.

**BACKGROUND**

This is a wage and hour violations suit brought by
four named plaintiffs on behalf of a putative class
against defendant sanofi-adventis U.S. Inc. [FN1]
Plaintiffs and all putative class members were
employed by defendant as pharmaceutical
representatives at all times relevant to the complaint.
First Amended Complaint ("FAC") ¶¶ 7-12. The

FAC describes four putative classes: a nationwide
Fair Labor Standards Act (FLSA) class, a
Pennsylvania class bringing Pennsylvania state law
claims, a California class bringing California state
law claims, and a nationwide Employee Retirement
Income Security Act (ERISA) class. See FAC ¶¶ 27-
58.

> FN1. The original complaint only named
> three plaintiffs. After defendant brought this
> motion plaintiffs filed an amended
> complaint with a fourth named plaintiff.

There are four named plaintiffs. One resides in the
Northern District of California, one in the Central
District of California, one in Pennsylvania, and one
in Florida. FAC ¶¶ 8-11. Among other claims,
plaintiffs contend that they worked hours in excess of
forty hours per workweek without receiving overtime
compensation. FAC ¶¶ 8-11.

Defendant is a Delaware corporation with its central
offices in New Jersey. Declaration of Kelly Byrne
("Byrne Decl.") ¶ 2. [FN2] Defendant's principal
place of business is its Bridgewater, New Jersey
location, which houses the company's corporate
human resources, payroll, benefits, legal, sales
operations, marketing, and compliance department.
Motion to Transfer Venue ("Mot.") at 2. While
defendant has its central offices in New Jersey, it has
a "Field Sales operation" which is dispersed across
the country, and District Sales Managers located
throughout the country. Plaintiffs' Opposition
("Oppo.") at 2. Defendant states that it does not
maintain any corporate or regional offices in
California. Mot. at 2.

> FN2. The website for the sanofi-aventis
> group, en.sanofi-aventis.com, reports that
> defendant sanofiaventis U.S., Inc. is the
> United States affiliate of the sanofi-aventis
> Group, an international organization with
> almost 100,000 employees worldwide, on
> 300 sites in 100 countries. The website for
> sanofiaventis U.S., Inc., www.sanofi-
> aventis.us, reports that there are
> approximately 16,000 employees in the
> United States, of whom approximately 8000
> are field sales professionals. The website
> reports that sanofi-aventis U.S., Inc.
> maintains 14 geographical sites throughout

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the U.S., none of which is located in California.

Now before the Court is defendant's motion to transfer venue to the District of New Jersey.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U .S.C. § 1404(a). The purpose of Section 1404(a) is to "prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (internal citations and quotation omitted). A motion for transfer lies within the broad discretion of the district court, and must be determined on an individualized basis. See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir.2000).

To support a motion for transfer, the moving party must establish: (1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses, and will promote the interests of justice. See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp., 820 F.Supp. 503, 506 (C.D.Cal.1992). Once venue is determined to be proper in both districts, courts evaluate the following factors to determine which venue is more convenient to the parties and the witnesses and will promote the interests of justice: (1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum. See Williams v. Bowman, 157 F.Supp.2d 1103, 1106 (N.D.Cal.2001).

## DISCUSSION

*2 The parties appear to agree that venue would be proper in either this district or the District of New Jersey. The key dispute, therefore, is whether the transfer will serve the convenience of the parties and witnesses, and will promote the interests of justice. As discussed, courts evaluate several factors in making this determination. On the whole, the balance of factors in this case favors transfer to New Jersey.

## 1. Plaintiffs' Choice of Forum

Defendant asserts that the deference usually given to plaintiffs' choice of forum should be given little to no weight because it is a putative class action. Mot. at 6. The Court finds that plaintiffs' choice of forum in this matter should be accorded some deference.

A plaintiff's choice of forum generally receives deference in a motion to transfer venue. Lewis v. ABC Business Servs., Inc., 135 F.3d 389, 413 (6th Cir.1998). In class actions, however, a plaintiff's choice of forum is often accorded less weight. See Koster v. Lumbermens Mutual Casualty Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir.1987) ("Although great weight is generally accorded plaintiff's choice of forum ... when an individual ... represents a class, the named plaintiff's choice of forum is given less weight."). Nonetheless, even in a class action,

> [i]n judging the weight to be accorded [plaintiff's] choice of forum, consideration must be given to the extent of both [plaintiff's] and the [defendants'] contacts with the forum, including those relating to [plaintiff's] cause of action.... If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter, [plaintiff's] choice is entitled to only minimal consideration.

Lou, 834 F.2d at 739 (citations omitted).

Under this guidance, the Court accords plaintiffs' choice of forum some weight. While the putative class members are scattered across the country, one of the named plaintiffs resides in this District and another resides elsewhere in California. FAC ¶¶ 8-11. Furthermore, defendant does not appear to dispute that the California plaintiffs performed much of their work for defendant in California, including in this district. Oppo. at 5; Mot. at 7. Several of plaintiffs' claims are California state law labor claims. Thus, this is not a case where "the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter," Lou, 834 F.2d at 739. Therefore, plaintiffs' choice of forum is accorded some deference.

## 2. Convenience of the Parties and Witnesses and Ease of Access to Evidence

Defendant argues that the convenience of the parties and witnesses, as well as ease of access to the evidence, weigh heavily in favor of transfer. The only named defendant has its principal place of business in New Jersey, and two of the named plaintiffs live on

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the East Coast. Plaintiffs argue in response that there are no named plaintiffs living or working in New Jersey, there is no New Jersey class, and there has been no showing that any of the putative FLSA class members work in New Jersey. For the following reasons, the Court agrees with defendant that this factor weighs in favor of transfer.

**\*3** Defendant asserts that more putative class members of the FLSA action work on the east coast than on the west coast. [FN3] Though the precise numbers are not clear, plaintiffs do not dispute this general fact. Both parties appear to agree that a significant number of class members will be called as witnesses, to provide testimony about the nature of the jobs at issue.

> FN3. The Declaration of Kelly Byrne in Support of Defendant's Motion to Transfer Venue, at ¶ 9, asserts that about 2,398 sales professionals are employed on the east coast (comprising Maine, New Hampshire, Massachusetts, Rhode Island, Connecticut, New York, New Jersey, Delaware, Maryland, Virginia, North Carolina, South Carolina, Georgia and Florida) and about 798 are employed on the west coast (Washington, Oregon and California).

Defendant further argues that many of the key witnesses are located in defendant's New Jersey headquarters, as well as critical documents and other evidence. Defendant states that the key operational and administrative personnel who would testify as to payroll practices and company policies regarding the positions at issue are in New Jersey. In its supporting declarations, defendant identifies the names and locations of the Vice Presidents of Sales, Vice Presidents/Senior Directors of Marketing, relevant Human Resources personnel, District Sales Managers and Regional Sales Directors for three of the four named plaintiffs. See Byrne Decl. ¶ ¶ 3-11; see also Supplemental Declaration of Kelly Byrne ("Byrne Supp. Decl.") ¶ ¶ 2-5 (Docket No. 68-1). The majority of these individuals, though not all of them, work in defendant's Bridgewater, New Jersey headquarters. Defendant reports that for plaintiff Evancho, five of those individuals work in the New Jersey headquarters and one works in Columbus, Ohio; for plaintiff Keeler, seven work in the New Jersey headquarters, one works in Scottsdale, Arizona, two work in Atlanta, Georgia, and one works in Palm City, Florida; and for plaintiff Guiriba, eight work in the New Jersey headquarters, two work in Scottsdale, Arizona, one works in Atlanta,

Georgia, and one works in San Francisco, California. See Byrne Supp. Decl. ¶ ¶ 3-5.

In response, plaintiffs argue that there will likely be witnesses from outside of New Jersey as well, including the four named plaintiffs, other members of the putative classes, and plaintiffs' direct supervisors ("District Sales Managers"). Plaintiffs also argue that because they are party witnesses, the convenience of the corporate witnesses identified by defendant should be afforded less weight.

The Court agrees with plaintiffs that "[t]he reality in nationwide class action suits such as this one is that witnesses live throughout the country." Oppo. at 7:8-9. Nonetheless, it also appears that a large number of critical witnesses live and work in New Jersey, and a greater proportion of the putative class members lives and works on the east coast than on the west coast. The Court therefore finds that the convenience of the witnesses factor weighs substantially in favor of transfer.

Other district courts have reached the same conclusion in similar cases. In *Kettler v. Presstek, Inc.*, No. 3:03:-CV-0846-D, 2003 U .S. Dist. LEXIS 13292, at \*1 (N.D.Tex. July 31, 2003), for example, a Texas district court transferred venue in a FLSA case to New Hampshire, where the employer had its principal place of business. The named plaintiff, a former Customer Service Representative for defendant, was a resident of Texas. The defendant employed many Customer Service Representatives around the country. In connection with their motion to transfer venue, the defendant "identifie[d] six anticipated witnesses, and ... specifie[d] the general content of their testimony.... Each works at [defendant's] office in Hudson, New Hampshire." *Id.* at \*7. After weighing all of the factors, the court granted the motion to transfer venue.

**\*4** More recently, the district court for the Southern District of New York transferred venue to New Jersey in a case, like this one, alleging FLSA violations by a New Jersey based pharmaceutical company. *See Freeman v. Hoffman-La Roche Inc., No. 06CIV 13497, 2007 WL 895282, at \*1 (S.D.N.Y. Mar. 21, 2007)*. In *Freeman,* the court found that the convenience of the New Jersey-based corporate witnesses was an important factor. *See id.* at \*2.

In *Waldmer v. SER Solutions, Inc.*, No. 05-2098-JAR, 2006 U.S. Dist. LEXIS 4934, at \*1 (D.Kan. Feb.3, 2006), the district court transferred venue in a somewhat analogous case. There, the defendant was

headquartered in Virginia, and had over a hundred employees scattered across the nation. *See id.* at *3. The plaintiff worked in Kansas. *See id.* In support of transfer, the defendants identified three non-party witnesses, and six party witnesses, who resided in Virginia. *See id.* at *10-*15. This fact was important to the court. *See id.* Furthermore, the court noted the fact that "the logical origin of this dispute is Virginia. It was at the company's headquarters in Virginia that [defendant]'s personnel made and implemented the decision to treat plaintiffs as exempt under the FLSA. No company policies were ever established in Kansas." *Id.* at *17. Similarly here, it appears that defendant made most, if not all, of the relevant personnel decisions in New Jersey, at its headquarters. The only difference between this case and *Waldmer* is that here, defendant has not identified any important non-party witnesses who reside in New Jersey.

**3. Familiarity of Each Forum with the Applicable Law**

This factor weighs in favor of the plaintiffs. Both districts are familiar with federal law. However, this Court is more familiar with California law than the District of New Jersey, and neither court can claim more familiarity with Pennsylvania law. Therefore, since there are California state law claims at issue in this case, this factor favors the Northern District of California.

**4. Remaining Factors**

The remaining factors, feasibility of consolidation with other claims, local interest in the controversy, and the relative court congestion and time of trial in each forum, are neutral. There is no evidence of other claims to consolidate. While New Jersey has an interest in the controversy, as the resident state of defendant's headquarters, California has an interest in protecting the rights of the putative California class members. Finally, the evidence provided by both parties shows that both districts are busy; neither one will provide substantial advantages as far as court congestion.

**CONCLUSION**

Viewing the totality of the factors, the Court finds that this case belongs in New Jersey. A larger proportion of the putative nationwide class members resides on the East Coast than the West Coast. Furthermore, the policies and practices of defendants that underlie this action originated largely at defendant's headquarters in New Jersey. For the

foregoing reasons and for good cause shown, the Court hereby GRANTS defendant's motion to transfer venue. [Docket 14] All other pending motions [defendant's motion to dismiss, 19, 59, 70, and plaintiffs' motion re collective action/notice, 45, 56] are deferred pending transfer.

*5 Plaintiffs earlier expressed concern that the statute of limitations on class members' FLSA claims was being adversely affected by the delay in sending notice occasioned by defendant's motion to change venue. Accordingly, this Court previously tolled the FLSA statute of limitations for two weeks, from May 18, 2007 to June 1, 2007. For similar reasons, this Court tolls the statute of limitations for an additional four week period, from June 1, 2007 until June 29, 2007, to avoid collateral prejudice caused by this transfer order.

As a final matter, the Court must also address the "supplemental memorandum" filed by plaintiffs on April 27, 2007, after hearing on this motion was held. In the supplemental memorandum, plaintiffs request that the Court consider severing and retaining the California state law claims, and the federal claims of California class members. The Court agrees with defendant that plaintiffs' supplemental memorandum is both procedurally improper and substantively unconvincing. Plaintiffs provide no explanation for their failure to raise this proposal in the normal course of briefing, or at the very least, prior to the hearing. Moreover, the Court finds that severing the class would run contrary to the interests of the courts, and the interests of the class itself. The Court therefore DENIES plaintiffs' request to sever. [Docket No. 77]

**IT IS SO ORDERED.**

Slip Copy, 2007 WL 1302985 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT //

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|
| **NEW YORK SOUTHERN** | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | 12,201 | 12,945 | 12,422 | 12,321 | 13,937 | 12,783 | | |
| | Terminations | 11,339 | 11,346 | 11,471 | 10,780 | 12,618 | 11,247 | | |
| | Pending | 20,047 | 19,302 | 17,638 | 17,275 | 16,198 | 15,818 | | |
| | % Change in Total Filings — Over Last Year | | -5.8 | | | | | 56 | 5 |
| | % Change in Total Filings — Over Earlier Years | | | -1.8 | -1.0 | -12.5 | -4.6 | 59 | 2 |
| | Number of Judgeships | 28 | 28 | 28 | 28 | 28 | 28 | | |
| | Vacant Judgeship Months** | 2.0 | 6.3 | 8.8 | 33.3 | 15.8 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 435 | 462 | 444 | 441 | 498 | 457 | 43 | 3 |
| | FILINGS — Civil | 385 | 409 | 388 | 381 | 441 | 420 | 21 | 3 |
| | FILINGS — Criminal Felony | 34 | 40 | 44 | 47 | 48 | 37 | 87 | 6 |
| | FILINGS — Supervised Release Hearings** | 16 | 13 | 12 | 13 | 9 | - | 64 | 5 |
| | Pending Cases | 716 | 689 | 630 | 617 | 579 | 565 | 8 | 2 |
| | Weighted Filings** | 501 | 551 | 527 | 513 | 539 | 560 | 28 | 3 |
| | Terminations | 405 | 405 | 410 | 385 | 451 | 402 | 55 | 3 |
| | Trials Completed | 13 | 15 | 16 | 17 | 15 | 15 | 71 | 3 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 16.7 | 14.5 | 11.9 | 11.8 | 13.3 | 12.3 | 93 | 6 |
| | From Filing to Disposition — Civil** | 8.3 | 8.8 | 8.1 | 8.4 | 8.3 | 7.2 | 23 | 1 |
| | From Filing to Trial** (Civil Only) | 25.7 | 22.0 | 26.8 | 22.6 | 23.0 | 24.4 | 48 | 1 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 3,107 | 2,652 | 1,656 | 1,312 | 1,230 | 1,585 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 18.4 | 16.7 | 11.6 | 9.2 | 9.2 | 12.1 | 89 | 6 |
| | Average Number of Felony Defendants Filed Per Case | 1.7 | 1.9 | 1.7 | 1.5 | 1.5 | 1.6 | | |
| | Jurors — Avg. Present for Jury Selection | 96.33 | 99.86 | 88.01 | 82.96 | 83.28 | 73.12 | | |
| | Jurors — Percent Not Selected or Challenged | 60.4 | 62.0 | 53.1 | 54.8 | 61.9 | 53.2 | | |

### 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE

| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Civil | 10793 | 230 | 767 | 1147 | 88 | 38 | 945 | 2257 | 1622 | 835 | 1374 | 66 | 1424 |
| Criminal* | 943 | 5 | 269 | 170 | 111 | 225 | 29 | 28 | 11 | 24 | 24 | 9 | 38 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

EXHIBIT 12

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| CALIFORNIA SOUTHERN | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|
| | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | 6,845 | 6,566 | 7,964 | 8,202 | 8,360 | 6,442 | | |
| | Terminations | 6,389 | 6,694 | 8,034 | 8,106 | 8,191 | 6,393 | | |
| | Pending | 3,776 | 3,324 | 3,506 | 3,592 | 3,522 | 3,462 | | |
| | % Change in Total Filings — Over Last Year | | 4.2 | | | | | 10 | 3 |
| | % Change in Total Filings — Over Earlier Years | | | -14.1 | -16.6 | -18.1 | 6.3 | 39 | 7 |
| | Number of Judgeships | 13 | 13 | 13 | 13 | 8 | 8 | | |
| | Vacant Judgeship Months** | 12.0 | 12.0 | 9.1 | 12.3 | .0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 527 | 504 | 612 | 631 | 1,045 | 805 | 20 | 5 |
| | FILINGS — Civil | 220 | 208 | 219 | 217 | 357 | 327 | 74 | 9 |
| | FILINGS — Criminal Felony | 209 | 193 | 262 | 274 | 437 | 478 | 5 | 2 |
| | FILINGS — Supervised Release Hearings** | 98 | 103 | 131 | 140 | 251 | - | 2 | 2 |
| | Pending Cases | 290 | 256 | 270 | 276 | 440 | 433 | 75 | 10 |
| | Weighted Filings** | 421 | 387 | 481 | 478 | 785 | 724 | 52 | 9 |
| | Terminations | 491 | 515 | 618 | 624 | 1,024 | 799 | 31 | 6 |
| | Trials Completed | 23 | 29 | 25 | 23 | 40 | 44 | 28 | 3 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 3.9 | 4.2 | 3.3 | 3.3 | 3.8 | 4.0 | 2 | 1 |
| | From Filing to Disposition — Civil** | 6.6 | 6.3 | 6.9 | 6.5 | 6.4 | 6.9 | 8 | 1 |
| | From Filing to Trial** (Civil Only) | 33.0 | 25.4 | 30.0 | 23.5 | 21.0 | 24.0 | 68 | 10 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 153 | 138 | 97 | 94 | 92 | 68 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 6.9 | 7.1 | 4.7 | 4.4 | 4.3 | 3.5 | 51 | 5 |
| | Average Number of Felony Defendants Filed Per Case | 1.2 | 1.1 | 1.1 | 1.1 | 1.1 | 1.1 | | |
| | Jurors — Avg. Present for Jury Selection | 53.64 | 58.66 | 59.13 | 55.51 | 58.29 | 58.31 | | |
| | Jurors — Percent Not Selected or Challenged | 42.2 | 44.5 | 44.5 | 45.3 | 44.3 | 45.9 | | |

| 2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 2860 | 83 | 194 | 767 | 95 | 21 | 67 | 204 | 173 | 177 | 663 | 4 | 412 |
| Criminal* | 2706 | 708 | 349 | 1457 | 14 | 93 | 35 | 3 | - | 2 | 17 | 12 | 16 |

* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
** See "Explanation of Selected Terms."